Filed 7/21/15; part. pub. & mod. order 8/18/15 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JEFFREY A. NEEDELMAN et al., | |
|     Plaintiffs and Appellants, | A141306 |
| v. | |
| DEWOLF REALTY CO., INC. et al., | (San Francisco City and County Super. Ct. No. CGC13531803) |
|     Defendants and Respondents. | |

After filing an answer to an unlawful detainer action, tenant Jeffrey A. Needelman (Needelman) entered into a settlement agreement, which included a stipulation for judgment, with DeWolf Realty Co., Inc. (DeWolf), the property management company, and M&H, L.P. (M&H),[1] the property owner. Needelman violated the agreement and the trial court entered a stipulated judgment giving DeWolf and M&H (collectively, the lessors) damages, costs, fees, and possession of the property.

Subsequently, Needelman and his daughter, Ona Needelman (Ona), sued the lessors for their damaged and missing personal property, which had remained in the rental residence after Needelman vacated the premises. Needelman and Ona (collectively, the Needelmans) also set forth other claims related to the prior unlawful detainer action and stipulated judgment. The trial court sustained the lessors' demurrer to the Needelmans' first amended complaint without leave to amend, and the Needelmans

_____

[1] The property owner was erroneously sued as M&MH, L.P.

1

appeal.[2]  We conclude that the doctrine of res judicata bars all of Needelman's claims and Ona, who was not a tenant and did not reside in the rental unit, cannot state a claim against the lessors.  Accordingly, we affirm the judgment.

## BACKGROUND

Needelman entered into a one-year lease beginning on April 1, 2008, with the management company of DeWolf for an apartment on Greenwich Street in San Francisco (Greenwich apartment).  DeWolf is an agent of M&H, the owner of the apartment building.  After the lease expired on March 31, 2009, Needelman remained as a month-to-month tenant.

On December 22, 2011, DeWolf served Needleman with a three-day notice to quit.  The notice stated that his tenancy was being terminated because of Needelman's "creating an unreasonable interference with the comfort, safety or enjoyment . . . of the other residents" of the complex.  The notice listed eight separate incidents between May 2011 and December 2011, which involved his damaging the premises, disturbing neighbors and other tenants in the building, and running around naked and/or in boxer shorts.  DeWolf terminated Needelman's tenancy pursuant to the San Francisco Rent Stabilization and Arbitration Ordinance (the Ordinance).

Needelman did not quit the premises, and the lessors filed an unlawful detainer action against him on January 3, 2012.  On January 27, 2012, Needelman filed an answer, asserting that statements in the complaint were false.  He also set forth various affirmative defenses, including breach of the warranty of habitability, violation of the Ordinance, payment of all rent that was due, discrimination based on Needelman's sexual orientation and religion, laches, and retaliation for requesting repairs.

On March 12, 2012, the parties reached a settlement and signed the stipulation for entry of judgment.  The stipulation permitted Needelman to remain on the premises until September 30, 2012.  Paragraph No. 2 stated that Needelman was "to abide by each and

---

[2]  Needelman, an attorney, is in propria persona; he is representing Ona in this appeal.

2

every term and condition of his lease, except the obligation to pay rent, and specifically not to violate any of the house rules and/or disturb or interfere with the quiet enjoyment of the other tenants." Paragraph No. 5 specified that if Needelman "fails to abide by the terms and conditions of his lease and other terms called for in paragraph No. 2, in the manner and by the time frame stated herein, . . . , then upon 24 hours oral or written notice to [Needelman], . . . , [the lessors] will be entitled to submit an Ex Parte Application for a Judgment Pursuant to Stipulation for possession of the premises . . . , as well as for money damages for any of the rent that may be due and owing or any of the attorney's fees and costs stated in paragraphs 1 [and] 2 above. Also, [the lessors] will be entitled to a money judgment for another $500.00 for attorney's fees for the additional work involved as well as $185.00 for costs incurred." A handwritten asterisk was next to paragraph No. 5, and in the upper margin of this page, it explained: "*A verified complaint signed under penalty of perjury by another tenant."

The settlement also provided that Needelman "waives any claims he may have, which [the lessors] assert do not exist, to bring an attempted wrongful eviction against [the lessors] or any action in any way arising out of or concerned with his tenancy . . . ." The next paragraph spelled out that Needelman "agrees that any of his personal property remaining in the unit after he vacates or is evicted therefrom shall be considered abandoned property, and [the lessors] shall be entitled to dispose of it without any notice to [Needelman] or his attorney."

On May 14, 2012, the lessors notified Needelman orally and in writing of their intent to submit an ex parte application for a judgment pursuant to their stipulation. Two days later, on May 16, they filed their ex parte application. At the hearing, which Needelman did not attend, the lessors supplied the court with a declaration of Bryan Silver, a tenant of the apartment building on Greenwich Street. He stated that on April 25, 2012, approximately 4:00 a.m., loud screaming and banging awakened him; he looked outside and observed a naked Needelman banging on the apartment building common area door. The police arrived and told Silver that four people in the neighborhood had called to report this disturbance. The lessors also submitted a

3

declaration by Landa Robertson, the property manager for the apartment building on Greenwich Street and employed by DeWolf. She stated that she received a complaint from a tenant that Needelman "was observed naked banging on his door . . . ." She contacted the night manager at a neighboring drugstore and that person confirmed that Needelman had entered the drugstore approximately 4:00 a.m., on April 25; he was "naked and appeared to be on drugs." The drugstore manager had a copy of the videotape depicting the incident. The lessors also submitted the police report documenting the incident.

On May 16, 2012, the trial court approved the stipulated judgment and gave the lessors possession of the Greenwich apartment. As specified in the stipulation, the court awarded the lessors $8,955.51 in damages, $500 in attorney fees, and $185 in costs for a total of $9,640.51.

The following day, the trial court issued an execution for possession of the real property. Six days later, on May 23, 2012, a notice to vacate and writ of possession were placed on the Greenwich apartment. The sheriff executed the writ of possession, locking Needelman out of the property, on May 30.

Prior to the sheriff's executing the writ of possession, on May 21, 2012, Needelman filed a motion in the superior court moved pursuant to Code of Civil Procedure section 473, subdivisions (b) and (d), to set aside the ex parte judgment.

The trial court on July 23, 2012, denied Needelman's motion to set aside the judgment. The court summarized Needelman's arguments under Code of Civil Procedure section 473, subdivision (b), as follows: Needelman "first argues that because he had other obligations to attend to his failure to appear at the ex-parte hearing to oppose [the lessors'] application constitutes 'surprise' or 'inadvertence.' [Needelman] fails to cite any legal authority for such proposition." Needleman "then argues that he made a written request for continuance to [the lessors], which he felt had to be honored in light of his other obligations. However, [Needelman] failed to provide any evidence of such request, putting [Needelman's] credibility in question." With regard to Needelman's argument under Code of Civil Procedure section 473, subdivision (d), that the judgment was void

4

because the stipulation required entry of judgment "only if another tenant filed a [v]erified [c]omplaint in a *separate lawsuit* against" Needelman, the court rejected this interpretation of the stipulation. (Italics added.) The court found the "corroborated" declaration of Silver, signed under penalty of perjury, sufficient evidence under paragraph No. 5 of the stipulation for entry of judgment.

Needelman appealed. The appellate division of the superior court affirmed the judgment on March 14, 2013.

On May 30, 2013, the Needelmans filed a complaint against the lessors for, among other things, breach of contract, wrongful eviction, and conversion. The lessors demurred, and the trial court sustained the demurrer to the complaint with leave to amend.

The Needelmans filed a first amended complaint against the lessors on September 20, 2013; they set forth causes of action for negligence, intentional tort, wrongful eviction, conversion, unfair competition, intentional and negligent infliction of emotional distress, breach of warranty of habitability, violation of civil forfeiture laws, and breach of contract. The pleading alleged that Needelman was a resident of the building on Greenwich Street, and had a lease with DeWolf. It further asserted that Needelman's daughter, Ona, lived overseas and had left her personal property in Needelman's Greenwich apartment. The first amended complaint asserted that the allegations in the three-day notice to quit were false. After vacating the Greenwich apartment, the lessors, according to the pleading, gave Needelman his personal property, but much of it was missing or damaged. The first amended complaint sought compensatory and punitive damages and an injunction.

The lessors demurred to the first amended complaint. The trial court issued a tentative ruling sustaining the lessors' demurrer without leave to amend. On November 6, 2013, the court adopted its tentative ruling.

On November 21, 2013, the Needelmans moved for reconsideration. They argued, among other things, that the order sustaining the demurrer erroneously stated that Needelman did not contest the tentative ruling.

On January 8, 2014, the trial court filed its amended order. The court stated that Needelman had appeared and stated that he wished to contest the tentative ruling. He asked for a continuance, which the court granted. The Needelmans did not appear at the continued hearing, and the court adopted its tentative ruling without oral argument on the matter. The court sustained the lessors' demurrer without leave to amend.

Judgment in favor of the lessors was entered on January 8, 2014; notice of entry of the judgment was filed on January 14, 2014. On March 14, 2014, the Needelmans filed their notice of appeal.

## DISCUSSION

### I. *Standard of Review*

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citation.]" (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967.)

### II. *The Doctrine of Res Judicata Bars all of Needelman's Claims*

The settlement agreement specifically provided that Needelman waived "any claims he may have, which [the lessors] assert do not exist, to bring an attempted wrongful eviction against [the lessors] or any action in any way arising out of or concerned with his tenancy . . . ." It also stated that Needelman "agrees that any of his personal property remaining in the unit after he vacates or is evicted therefrom shall be

6

considered abandoned property, and [the lessors] shall be entitled to dispose of it without any notice to [Needelman] or his attorney."

The lessors contend that the doctrine of res judicata bars all of Needelman's causes of action because all of his claims could have been raised as defenses in the unlawful detainer action and/or were addressed and settled by the stipulated judgment. Needelman responds that res judicata does not apply to those causes of action that are predicated on conduct occurring after entry of the stipulated judgment; he also contends that res judicata is inapplicable to unlawful doctrine actions. For the reasons discussed below, we conclude that the doctrine of res judicata bars Needelman's 10 causes of action.[3]

A. *Res Judicata and the Rules for Interpreting the Stipulated Judgment*

Code of Civil Procedure section 1908 codifies the res judicata doctrine, and provides that "a judgment or final order in an action or special proceeding" is conclusive as to "the matter directly adjudged." (*Id.,* subd. (a)(2).) "Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them." (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896-897.) The doctrine applies when (1) the issues decided in the prior adjudication are identical with those presented in the later action; (2) there was a final judgment on the merits in the prior action; and (3) the party against whom the plea is raised was a party or was in privity with a party to the prior adjudication. (*Pollock v. University of Southern California* (2003) 112 Cal.App.4th 1416, 1427.) The party asserting issue preclusion bears the burden of establishing these requirements. (*Lucido v.*

---

[3] The 10 causes of action in the first amended complaint are all on behalf of Needelman. As noted, these causes of action are: negligence, intentional tort, wrongful eviction, conversion, unfair competition, intentional and negligent infliction of emotional distress, breach of warranty of habitability, violation of civil forfeiture laws, and breach of contract. Five of these causes of action are also on behalf of Ona. We discuss the application of the res judicata doctrine only as to Needelman's claims. Ona was not a party to the unlawful detainer action and lessors do not argue that she was in privity with Needelman.

*Superior Court* (1990) 51 Cal.3d 335, 341.)  Here, Needelman does not dispute that he was the party in the prior adjudication but maintains the lessors did not establish that the first two requirements were satisfied.

The question whether the issues decided in the prior adjudication are identical to the ones raised by Needelman's lawsuit requires us to interpret the stipulated judgment.  When interpreting the stipulated judgment, we use ordinary contract principles and, in the absence of extrinsic evidence, we may interpret it as a matter of law.  (*Jamieson v. City Council of the City of Carpinteria* (2012) 204 Cal.App.4th 755, 761.)

Here, the stipulated judgment unambiguously provided that Needelman waived any claims for wrongful eviction "or any action in any way arising out of or concerned with his tenancy . . . ."  Furthermore, the stipulated judgment clearly spelled out that he agreed that any personal property remaining in the residence after he vacated or was evicted "therefrom shall be considered abandoned property, and [the lessors] shall be entitled to dispose of it without any notice to [Needelman] or his attorney."

**B.**  ***Claims Based on Conduct Following the Unlawful Detainer Action***

Needelman argues that five of his 10 causes of action were based on conduct occurring after entry of the judgment and concludes that these claims were therefore not related to the unlawful detainer action.  We can quickly dispose of this argument.

All of Needelman's causes of action, including the five based on conduct occurring after the judgment, were based on allegations that the lessors included false statements in the three-day notice in the underlying unlawful detainer action, that they engaged in wrongful conduct in bringing the unlawful detainer action and in applying for an ex parte judgment pursuant to the stipulation, and that they damaged or did not return Needelman's personal property after forcing him to leave the Greenwich apartment.  As noted, the settlement agreement specifically, and unambiguously, provided that Needelman waived any causes of action related to any alleged wrongful eviction or related to his tenancy at the Greenwich apartment.  It also provided that any of the personal property remaining after Needelman vacated or was evicted would be

8

considered abandoned and that the lessors were entitled to dispose of it without any notice to Needelman.

Needelman does not seriously dispute that his claims were within the scope of the stipulated judgment or were adjudicated at the ex parte hearing. It is immaterial that some of Needelman's claims—such as damage to his personal property left in the residence after his eviction—were based on actions taken by the lessors after he signed the agreement or after entry of the stipulated judgment. These claims were based on conduct addressed and settled by the stipulated judgment.

## C. *The Application of Res Judicata to Unlawful Detainer Actions*

Needelman's principal argument is that a stipulated judgment arising from a summary unlawful detainer proceeding has limited res judicata effect. (See, e.g., *Vella v. Hudgins* (1977) 20 Cal.3d 251 (*Vella*) [after tenant was evicted, landlord could not use res judicata and collateral estoppel to bar tenant's fraud action].) He maintains that even if his claims could have been settled in the unlawful detainer action, he signed the stipulation prepared by counsel for the lessors prior to trial and never had an opportunity to litigate the matter. He also stresses that he never had an opportunity to submit evidence at the ex parte hearing.

Needelman relies on language in *Vella, supra,* 20 Cal.3d 251 to contend that the res judicata effect of an unlawful detainer judgment is "very limited . . . and will not prevent one who is dispossessed from bringing a subsequent action to resolve questions of title [citations], or to adjudicate other legal and equitable claims between the parties." (*Id.* at p. 255.) He contends that affirmative defenses can be raised as claims for affirmative relief in a subsequent action unless they were litigated and he never had an opportunity to litigate the unlawful detainer action and he did not have a full and fair hearing on the lessors' claim that he violated the stipulated agreement.

Needelman incorrectly claims that he never had an opportunity to litigate the unlawful detainer action. He appeared in the unlawful detainer action when he filed his answer. (Code Civ. Proc., § 1014 ["A defendant appears in an action when the defendant answers"]; *California Dental Assn. v. American Dental Assn.* (1979) 23 Cal.3d 346, 352

9

[answering the merits of a complaint constitutes a general appearance in the action].) Furthermore, he had an opportunity to litigate his defenses to the unlawful detainer action; instead, he decided to settle. Counsel for the lessors might have prepared the settlement agreement but Needelman is an attorney and cannot claim that he did not understand the significance of signing the stipulation.

Under California law, a "judgment entered without contest, by consent or stipulation, is usually as conclusive a merger or bar as a judgment rendered after trial." (7 Witkin, Cal. Procedure (5th ed. 2008) Judgment, § 372, p. 996; accord, *Victa v. Merle Norman Cosmetics, Inc.* (1993) 19 Cal.App.4th 454, 460-461; *De Weese v. Unick* (1980) 102 Cal.App.3d 100, 105.) Accordingly, Needelman cannot now relitigate claims within the scope of the stipulated settlement; claims that *could* have been litigated in the unlawful detainer action are now barred. (See 7 Witkin, Cal. Procedure (4th ed. 1997) Judgment, § 369, p. 939 [unlawful detainer judgment's res judicata effect applies to affirmative defenses that would preclude removal of the tenant].)

Similarly, Needelman's claim that he had no opportunity to oppose the lessors' evidence at the ex parte hearing is inaccurate. He was given proper notice of the hearing but chose not to attend. Failing to participate or attend the hearing is not the same as not having an opportunity to litigate. "The doctrine of res judicata, whether applied as a total bar to further litigation or as collateral estoppel, 'rests upon the sound policy of limiting litigation by preventing a party who has had *one fair adversary hearing* on an issue from again drawing it into controversy and subjecting the other party to further expense in its reexamination.' " (*Vella, supra,* 20 Cal.3d at p. 257.) Needelman cannot now belatedly attempt to challenge the evidence at the ex parte hearing, which showed that he violated the stipulation.

As noted, Needelman appeared in the unlawful retainer action and chose to sign the stipulated agreement, which specifically waived any claims related to his personal property left at the residence, as well as all his defenses to the unlawful retainer action. These factors distinguish Needelman's situation from that of the litigants in many of the cases he cites in his appellate briefs. (See, e.g., *Moriarty v. Laramar Management Corp.*

10

(2014) 224 Cal.App.4th 125, 138-140 [default judgment in unlawful detainer action did not preclude tenant's claims for breach of warranty of habitability and wrongful eviction based on violating the Ordinance and these claims not subject to Code Civ. Proc., § 425.16[4]]; *Chacon v. Litke* (2010) 181 Cal.App.4th 1234, 1254 [unlawful detainer judgment did not preclude tenant's subsequent wrongful eviction claims because the stipulation did not "manifest the objective intention of the parties to award permanent possession to [the landlord] or to constitute a waiver of the [tenants'] right to reoccupy the apartment"]; *Landeros v. Pankey* (1995) 39 Cal.App.4th 1167, 1173-1174 [collateral estoppel no bar to issue that was not expressly within stipulated judgment in prior unlawful detainer action and could not have been raised in that action; stipulated judgment in unlawful detainer action did not bar alleged breach of warranty of habitability]; *Pelletier v. Alameda Yacht Harbor* (1986) 188 Cal.App.3d 1551, 1557 [stipulated judgment without preclusive effect where no mention of intention to relinquish subject claims].)  In contrast to the cases relied upon Needelman, here, Needelman did appear and litigate the unlawful detainer action and the stipulated judgment specifically settled the claims he is now attempting to relitigate.

Needelman relies on *Ben-Shahar v. Pickart* (2014) 231 Cal.App.4th 1043 to argue that the trial court did not have authority to enforce the stipulated judgment in the unlawful detainer proceedings.  This case held that a tenant's complaint for breach of a settlement agreement reached after an unlawful detainer proceeding was not based on "protected activity" under the anti-SLAPP statute.  The defendant initiated unlawful detainer proceedings and, at the hearing, the defendant informed the court he intended to move into the unit with his family.  (*Ben-Shahar,* at p. 1047.)  The court ruled that the plaintiff had to vacate and that the defendant had acted in good faith.  (*Id.* at pp. 1047-1048.)  The parties entered into an agreement; the plaintiff promised to vacate and the defendants promised to comply with the city rent control ordinance.  (*Ben-Shahar,* at

---

**4**  This statute is commonly referred to as the anti-SLAPP (strategic lawsuit against public participation) statute.

11

p. 1048.)  Subsequently, the plaintiff requested that the trial court find in the unlawful detainer proceedings that the defendants had breached the unlawful detainer settlement. (*Ibid*.)  The trial court indicated that it could not consider the plaintiff's claims in the unlawful detainer proceedings; it could undertake consideration of the merits only if the case were reclassified from limited to unlimited.  (*Ibid.*)

Needelman maintains that here, as in *Ben-Shahar v. Pickart, supra,* 231 Cal.App.4th 1043, "the unlawful detainer court did not have the authority to adjudicate violations of the unlawful detainer settlement."  He completely ignores that in *Ben-Shahar,* the plaintiff did not seek to have the court enter a judgment pursuant to a stipulation, as was done in this case, but was seeking to have the court adjudicate a new and different claim.  As repeatedly stressed, Needelman signed a "Stipulation for Judgment," and a court has the authority to enter judgment in accordance with the contractual agreement of the parties.  (See, e.g., *City of Gardena v. Rikuo Corp.* (2011) 192 Cal.App.4th 595, 600.)  " '[B]y consenting to the judgment or order the party expressly waives all objection to it, and cannot be allowed afterwards, on appeal, to question its propriety, because by consenting to it he has abandoned all opposition or exception to it.' "  (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 400.)

" 'The doctrine of res judicata rests upon the ground that the party to be affected . . . has litigated, or *had an opportunity* to litigate the same matter in a former action in a court of competent jurisdiction, and should not be permitted to litigate it again to the harassment and vexation of his opponent.  Public policy and the interest of the litigants alike require that there be an end to litigation.' "  (*Fairchild v. Bank of America* (1958) 165 Cal.App.2d 477, 482, italics added.)

Here, Needelman had the opportunity to litigate the unlawful detainer action and all of his claims were based on defenses that could have been raised in this action or were specifically addressed and settled in the stipulated judgment.  Accordingly, the doctrine of res judicata bars all of his claims.

**D.** *No Abuse of Discretion*

Needelman asserts that he can amend his fourth cause of action for conversion to set forth claims for breach of a bailment agreement, negligent bailment, and loss and destruction of his property. For the reasons already extensively discussed, the doctrine of res judicata bars his claim of loss and destruction of his property.

Needelman cites no authority to support his bailment claims.[5] He simply references one paragraph in the first amended complaint and then declares with no analysis that this paragraph constitutes a bailment agreement. The paragraph in the pleading upon which he relies indicates that counsel for the lessors sent him the following e-mail on June 25, 2012: " 'If you wish to pay the removal and storage costs from May 30, 2012[,] to [whenever] you are ready to pick up and remove everything (all of the abandoned property you left in the unit when you were evicted on May 30, 2012) from its present storage location, you may arrange it with me directly on my return or via email if you are able to pay the costs earlier than July 2, 2012.' "

It is the "plaintiff's burden to show the reviewing court how the complaint can be amended to state a cause of action." (*Michaelian v. State Comp. Ins. Fund* (1996) 50 Cal.App.4th 1093, 1105.) Needelman has not provided any explanation for how the foregoing paragraph satisfies the requirements for a bailment contract or what allegations demonstrate a breach or negligent breach of that contract.[6]

---

[5] "In a broad sense a bailment is the delivery of a thing to another for some special object or purpose, on a contract, express or implied, to conform to the objects or purposes of the delivery which may be as various as the transactions of men. [Citation]." (*H.S. Crocker Co., Inc. v. McFaddin* (1957) 148 Cal.App.2d 639, 643.) Bailments may be voluntary or involuntary but "[n]o bailment can be implied where it appears it was the intention of the parties, as derived from their relationship to each other and from the circumstances of the case, that the property was to be held by the party in possession in some capacity other than as bailee." (*Id.* at p. 644.)

[6] In an action for breach of a bailment contract, the bailor must prove that the agreement is a bailment contract, the property was deposited with the bailee, a demand was made for the property, and the bailee failed to return the property. (*Gebert v. Yank* (1985) 172 Cal.App.3d 544, 551-552.)

13

It is not this court's role to construct arguments that would undermine the lower court's judgment and defeat the presumption of correctness. Rather, an appellant is required to present a cognizable legal argument in support of reversal of the judgment and when the appellant fails to support an issue with pertinent or cognizable argument, "it may be deemed abandoned and discussion by the reviewing court is unnecessary." (*Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699-700.) Issues not supported by argument or citation to authority are forfeited. (See, e.g., *People ex rel. Reisig v. Acuna* (2010) 182 Cal.App.4th 866, 873; *Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99.)

The trial court permitted Needelman to amend his pleading after the first demurrer and it did not abuse its discretion in sustaining the demurrer without leave to amend after Needelman failed to remedy the defects. Needelman has not demonstrated that he can amend his pleading to state a cause of action outside the scope of the unlawful detainer action and stipulated judgment.

### III. *The Waivers in the Stipulation Do Not Violate Public Policy*

On appeal, Needelman maintains that the stipulated judgment violated his due process rights because it permitted the lessors to obtain a judgment against him under specified conditions after giving him only 24 hours notice. The lessors maintain that we should disregard this argument because he failed to raise it in the trial court.

As a general rule, a constitutional issue in civil cases must be raised at the earliest opportunity or it will be deemed waived. (See *Hershey v. Reclamation Dist. No. 108* (1927) 200 Cal. 550, 564.) Although we have the discretion to apply this general rule, we will consider the merits of Needelman's claim since it is based on undisputed facts and the lessors had an opportunity to address this argument in their appellate brief.

" 'The fundamental requisite of due process of law is the opportunity to be heard.' [Citation.] The hearing must be 'at a meaningful time and in a meaningful manner.' [Citation.] In the present context these principles require that a recipient have timely and adequate notice . . . .' " (*Goldberg v. Kelly* (1970) 397 U.S. 254, 267.) This means a litigant must be given "the opportunity to present reasons, either in person or in writing,

14

why proposed action should not be taken . . . ." *(Cleveland Board of Education v. Loudermill* (1985) 470 U.S. 532, 546.) Needelman stresses that the United States Supreme Court has held that the opportunity to be heard is required before deprivation of a protected interest. (See *United States v. James Daniel Good Real Property* (1993) 510 U.S. 43, 46, 53 [absent exigent circumstances, due process clause requires government in civil forfeiture case from seizing real property without providing owner notice and opportunity to be heard]; *Fuentes v. Shevin* (1972) 407 U.S. 67, 85 [prejudgment replevin statutes of Florida and Pennsylvania requiring no prior hearing before seizure of goods were unconstitutional].)

Here, the provision in the stipulation did not deprive Needelman of due process. The stipulation required that he be given 24 hours notice of an ex parte motion for a judgment pursuant to stipulation. Indeed, on May 14, 2012, the lessors notified Needelman orally and in writing of their intent to submit an ex parte application for a judgment pursuant to stipulation, and they filed such an application two days later on May 16. Needelman complains that he was unable to attend the hearing but he had agreed to his receiving shortened notice. Furthermore, according to evidence Needelman submitted to the trial court, he did not attend the hearing because he was faced with a choice between appearing in response to the ex parte application or meeting his other work deadlines; he *chose* to meet his deadlines rather than appear at the hearing. Needelman thus had notice and an opportunity to oppose the application; the stipulated judgment did not violate his due process rights.

Needelman argues, without citing any authority, that Code of Civil Procedure section 664.6 requires a noticed motion as opposed to an ex parte motion. Code of Civil Procedure section 664.6 provides: "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. . . ."

Needelman's reliance on Code of Civil Procedure section 664.6 is misguided. The lessors did not bring a motion under this section, but sought judgment as specifically

15

provided for in the settlement agreement. Here, paragraph No. 5 of the settlement agreement specifically permitted, upon 24 hours notice, an ex parte application for a judgment pursuant to the terms of the stipulation. Furthermore, section 664.6 of the Code of Civil Procedure does not on its face require a noticed motion. The words "upon motion" generally mean a request of a party. (See *Oppenheimer v. Deutchman* (1955) 132 Cal.App.2d Supp. 875, 879.)

Needelman extensively discusses the concurring opinion of Acting Presiding Justice Staniforth in *Welsch v. Goswick* (1982) 130 Cal.App.3d 398. Justice Staniforth concluded that the stipulation in *Welsch* violated one of the party's constitutional right to privacy and therefore the stipulated injunctive judgment was unenforceable. (*Welsch,* at pp. 410-412.) This concurrence is not germane to this appeal because the stipulation in the present case, unlike the stipulation in *Welsch,* did not violate Needelman's constitutional rights.

Needelman also relies on *Little v. Sanchez* (1985) 166 Cal.App.3d 501, but this case, too, is unavailing. In *Little,* the record showed that the property owner had prepared documents in English that resembled official court forms; the documents "were captioned 'STIPULATION FOR JUDGMENT UNLAWFUL DETAINER.' " (*Little,* at p. 504.) The tenants, who did not speak English, signed the documents, and thereby agreed that the landlord was entitled to immediate possession of their homes and the execution "was to be 'stayed' only after the tenants, in essence, had made full payment of all their arrearages. More importantly, this stay was thereafter to remain contingent upon the tenants paying to respondent 'on the 1st of each and every month [an amount that often far exceeded their scheduled rent] as consideration for the stay herein so long as defendant(s) remain in possession of said premises, no new tenancy being created by said payment.' " (*Id.* at p. 504.) The tenants provided declarations that they were unaware of the nature and effect of these stipulations and the landlord never challenged the truth of these declarations. (*Ibid.*) The reviewing court held that these stipulations were void as they dispossessed the tenants without notice or hearing in the event they failed to pay their monthly installment. (*Id.* at p. 505.) In contrast, here, the record contains no

16

evidence that Needelman did not understand the stipulation. More significantly, unlike the situation in *Little,* the stipulation in the present case did not allow dispossession without notice or a hearing. To the contrary, the stipulation required an ex parte hearing to determine whether judgment pursuant to the stipulation should be entered.

Accordingly, we reject Needelman's claim that the stipulation violated his due process rights.

**IV.** *The Waivers in the Stipulation Do Not Violate Civil Code Section 1942.1*

In one sentence in his opening brief and in two paragraphs in his reply brief, Needelman asserts that paragraph No. 9 of the stipulated judgment is contrary to public policy and void under Civil Code section 1942.1. He claims that he could not waive his claim to any breach of the warranty of habitability.

Paragraph No. 9 provides: "The parties agree that each of the parties has been fully advised of the contents of California Civil Code [s]ection 1542, and said section and its benefits are expressly waived. Section 1542 reads as follows: [¶] 'Section 1542 (General Release-Claims Extinguished) [¶] A general release does not extend to claims which the creditor does not know or suspect to exist in its favor at the time of executing the release, which, if known by him, must have materially affected his settlement with debtor.' [¶] Specifically, the parties agree that [Needelman] waives any claims he may have, which [the lessors] assert do not exist, to bring an attempted wrongful eviction action against [the lessors], their agents, employees and attorneys or any action in any way arising out of or concerning his [Greenwich apartment] tenancy . . . ."

Civil Code section 1942.1 contains two paragraphs. The first paragraph provides that: "Any agreement by a lessee of a dwelling waiving or modifying his rights under Section 1941 or 1942 shall be void as contrary to public policy with respect to any condition which renders the premises untenantable, except that the lessor and the lessee may agree that the lessee shall undertake to improve, repair or maintain all or stipulated portions of the dwelling as part of the consideration for rental." The second paragraph expressly authorizes arbitration of tenantability (i.e., warranty of habitability) disputes: "The lessor and lessee may, if an agreement is in writing, set forth the provisions of

17

Sections 1941 to 1942.1, inclusive, and provide that any controversy relating to a condition of the premises claimed to make them untenantable may by application of either party be submitted to arbitration . . . ." (Civ. Code, § 1942.1.)

Code of Civil Procedure section 1942.1 voids any lease provision waiving a tenant's rights under Civil Code section 1941 and 1942. (See *Green v. Superior Court* (1974) 10 Cal.3d 616, 625, fn. 9 ["public policy requires that landlords generally not be permitted to use their superior bargaining power to negate the warranty of habitability rule" by any provision in the lease or rental agreement].) This statute applies to lease and rental agreements; it does not void the waiving of a legal claim that the property owner violated the warranty of habitability as one of the terms of a settlement agreement in an unlawful detainer action.

### V. *Issues Raised for the First Time in Needelman's Reply Brief*

In his reply brief, Needelman contends that the waivers in paragraphs Nos. 9 and/or 10 of the settlement agreement[7] are void as against public policy under Civil Code sections 1598, 1599, 1668, 1953, and 3513,[8] and the Ordinance, San Francisco

---

[7] Paragraph No. 10 reads: "The parties agree that each party has been fully advised of the contents of California Civil Code [s]ection 1980, et seq., dealing with the disposition of personal property on the premises at the termination of a tenancy, and said sections and their benefits are expressly waived. Specifically, [Needelman] agrees that any of his personal property remaining in the unit after he vacates or is evicted therefrom shall be considered abandoned property, and [the lessors] shall be entitled to dispose of it without any notice to [Needelman] or his attorney."

[8] These statutes read: "Where a contract has but a single object, and such object is unlawful, whether in whole or in part, or wholly impossible of performance, or so vaguely expressed as to be wholly unascertainable, the entire contract is void." (Civ. Code, § 1598.) "Where a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest." (*Id.,* § 1599.) "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." (*Id.,* § 1668.) "(a) Any provision of a lease or rental agreement of a dwelling by which the lessee agrees to modify or waive any of the following rights shall be void as contrary to public policy: [¶] (1) His rights or remedies under Section 1950.5 or 1954. [¶] (2) His right to assert a cause of action

18

Administrative Code section 37.9, subdivision (e). He also asserts that the waiver provision in paragraph No. 9 lacked consideration.

Other than the Ordinance, none of the above statutes was mentioned in Needelman's opening brief on appeal. In his opening brief, he asserts that the lessors violated the Ordinance but does not make the argument that the settlement agreement is void under the Ordinance. Furthermore, with the exception of Civil Code section 1668, Needelman did not cite any of the above Civil Code sections in his opposition to the demurrer in the trial court. He did argue that paragraph No. 9 was void under Civil Code section 1668 in the trial court, but did not raise this argument in his opening brief in this

---

against the lessor which may arise in the future. [¶] (3) His right to a notice or hearing required by law. [¶] (4) His procedural rights in litigation in any action involving his rights and obligations as a tenant. [¶] (5) His right to have the landlord exercise a duty of care to prevent personal injury or personal property damage where that duty is imposed by law. [¶] (b) Any provision of a lease or rental agreement of a dwelling by which the lessee agrees to modify or waive a statutory right, where the modification or waiver is not void under subdivision (a) or under Section 1942.1, 1942.5, or 1954, shall be void as contrary to public policy unless the lease or rental agreement is presented to the lessee before he takes actual possession of the premises. This subdivision does not apply to any provisions modifying or waiving a statutory right in agreements renewing leases or rental agreements where the same provision was also contained in the lease or rental agreement which is being renewed." (*Id.,* § 1953, subds. (a) & (b).) "Any one may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement." (*Id.,* § 3513.)

Ordinance, San Francisco Administrative Code section 37.9, subdivision (e) provides: "It shall be unlawful for a landlord or any other person who willfully assists the landlord to endeavor to recover possession or to evict a tenant except as provided in Section 37.9(a) and (b). Any person endeavoring to recover possession of a rental unit from a tenant or evicting a tenant in a manner not provided for in Section 37.9(a) or (b) without having a substantial basis in fact for the eviction as provided for in Section 37.9(a) shall be guilty of a misdemeanor and shall be subject, upon conviction, to the fines and penalties set forth in Section 37.10A. Any waiver by a tenant of rights under this Chapter [except as provided in Section 37.10A(g),] shall be void as contrary to public policy."

19

court. He did not argue in the trial court or in his opening brief that the waiver provision in paragraph No. 9 lacked consideration.[9]

It is well settled that arguments raised for the first time in an appellant's reply brief are forfeited unless good reason has been shown for failure to raise them. (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 482, fn. 10.) Such arguments deprive the respondent of an opportunity to counter the argument. (*American Drug Stores, Inc. v. Stroh* (1992) 10 Cal.App.4th 1446, 1453.) Needelman does not explain the reasons he raised arguments for the first time in his reply brief and we decline to consider these untimely arguments.

## VI. *The Trial Court Properly Sustained the Demurrer Without Leave to Amend as to Ona's Claims*

In the first amended complaint, the Needelmans claim that Ona, Needelman's daughter, left personal property at his Greenwich apartment while she lived overseas and this property was missing or damaged after Needelman vacated the premises. There is no allegation that she was a third party beneficiary under the rental agreement or that she had any other contractual relationship with the lessors.

The pleading set forth the following five causes of action on behalf of Ona: conversion (fourth cause of action); unfair competition based on the unlawful detainer action, violating the Ordinance, violating Code of Civil Procedure sections 715.030 and 1174, subdivisions (e) through (m), and Civil Code section 1983 through 1988 (fifth cause of action); intentional and negligent infliction of emotional distress (sixth and seventh causes of action, respectively); and violating civil forfeiture laws (ninth cause of action) under the same Code of Civil Procedure and Civil Code statutes set forth in the unfair competition cause of action.

---

[9] This argument is particularly frivolous as Needelman benefitted from the stipulation: the lessors did not go forward with their unlawful detainer action and permitted him to remain in his residence until September 30, 2012, as long as he complied with paragraph No. 9 and the other terms of the agreement. Forbearing suit or extending time for performance, which suspends a legal right, constitutes a sufficient consideration. (See Civ. Code, § 1605; *Levine v. Tobin* (1962) 210 Cal.App.2d 67, 70.)

20

" 'Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages.' " (*Farmers Ins. Exchange v. Zerin* (1997) 53 Cal.App.4th 445, 451-452.) Ona's claim, as alleged in the first amended complaint, is based on the repossession of Needelman's apartment. The repossession occurred after Needelman had violated the stipulation. Needelman was provided notice to vacate on May 23, 2012, and the sheriff executed the writ of possession seven days later, on May 30, 2012. Needelman waited until May 29, 2012, to remove the property and then claimed he was unable to remove all of it. The lessors did not prevent him from removing all of the personal property. The writ of possession was done pursuant to the ex parte application for entry of judgment and was lawful, and therefore Ona cannot allege the essential element that the defendant's conversion was wrongful.

The unfair business (fifth cause of action) and violating the civil forfeiture laws (ninth cause of action) claims were based on allegations that the lessors failed to comply with the Ordinance, that they engaged in misconduct related to the unlawful detainer action, and that they violated other statutes governing how a landlord may remove and dispose of property left behind by vacating tenants. Specifically, in the fifth cause of action, the allegations were that the lessors violated the statutes "so as to consider personal property left by tenants on formerly rented property after unlawful detainer proceedings abandoned; to force former tenants to sign waivers of liability before returning their personal property; and to charge unconscionably high storage, packing, and transportation fees to former tenants before returning their personal property; and that such conduct amounts to unlawful or unfair business practices . . . ." Ona was not a tenant; the lessors did not owe her any legal duty. All of these allegations are based on a tenant/landlord relationship, and thus the trial court properly sustained the demurrer against her fifth and ninth causes of action.

Intentional infliction of emotional distress exists when there is " ' " '(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless

21

disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.' " ' " (*Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 1001; see *Christensen v. Superior Court* (1991) 54 Cal.3d 868, 903.) The defendant's conduct must be " ' "intended to inflict injury or engaged in with the realization that injury will result." ' " (*Potter,* at p. 1001.) The egregious conduct must be directed at the plaintiff or, if in reckless disregard, the conduct must occur " 'in the presence of a plaintiff *of whom the defendant is aware*.' " (*Id.* at p. 1002.)

The first amended complaint stated that Ona lived overseas; thus she was not present for any of the events alleged in the pleading. There is no allegation that she had any contractual or other legal relationship with the lessors. There is no allegation that the lessors knew about Ona or directed any of their conduct towards her. Accordingly, Ona's fifth cause of action for intentional infliction of emotional distress fails.

Similarly, Ona does not have any claim for negligent infliction of emotional distress, the sixth cause of action. Negligent infliction of emotional distress is a form of the tort of negligence, to which the elements of duty, breach of duty, causation and damages apply. (*Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.* (1989) 48 Cal.3d 583, 588.) Courts distinguish between bystander and direct victim cases. (See, e.g., *Burgess v. Superior Court* (1992) 2 Cal.4th 1064, 1072.) The right to recover for emotional distress as a "direct victim" arises from the breach of a duty that is assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of the defendant's preexisting relationship with the plaintiff. (*Id.* at pp. 1073-1074.) Here, Ona was not a direct victim; the pleading includes no allegation that the lessors had a preexisting relationship with her. A claim based on being a bystander plaintiff requires, among other elements, that the plaintiff "is present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim . . . ." (*Thing v. La Chusa* (1989) 48 Cal.3d 644, 647.) As noted, Ona was not present at the scene as she was overseas.

The Needelmans' appellate briefs barely address Ona's claims. In their reply brief, they maintain that the first amended complaint shows that Ona was a member of Needelman's household at the time of the eviction. The Needelmans do not provide the exact allegations that support this claim but, in any event, such allegations are immaterial. Ona was not on the lease and the lessors did not owe her any legal duty; Ona was not present when any of the alleged misconduct occurred. The Needelmans' other arguments that Ona has standing because her personal property was damaged or missing and that she suffered emotional distress and economic damage when she was notified that her property had been taken do not—for the reasons already noted—satisfy the elements necessary to state a cause of action against the lessors.

Ona has not shown that she can amend the first amended complaint to state a cause of action and the trial court did not abuse its discretion in denying her a second opportunity to amend the pleading.

## DISPOSITION

The judgment is affirmed. The Needelmans are to pay the costs of appeal.

_____
Kline, P.J.

We concur:

_____
Richman, J.

_____
Stewart, J.

23

Filed 8/18/15

CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JEFFREY A. NEEDELMAN et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>DEWOLF REALTY CO., INC. et al.,<br><br>    Defendants and Respondents. | A141306<br><br>(San Francisco City and County<br>Super. Ct. No. CGC13531803)<br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING,<br>CERTIFYING OPINION FOR<br>PUBLICATION<br>NO CHANGE IN JUDGMENT |

**THE COURT:**

It is ordered that the opinion filed herein on July 21, 2015, be modified as follows:

1. On page 4, first sentence of the third full paragraph, delete the word "moved."

2. On page 6, in the part II heading, capitalize the word "all."

3. On page 10, first sentence of the last paragraph, delete the word "retainer" and replace it with the word "detainer" so the sentence reads:

    As noted, Needleman appeared in the unlawful detainer action and chose to sign the stipulated agreement, which specifically waived any claims related to his personal property left at the residence, as well as all his defenses to the unlawful detainer action.

4. On page 16, the second sentence of the first full paragraph is changed to read:

    Justice Staniforth concluded that the stipulation in *Welsch* violated a party's constitutional right to privacy and therefore the stipulated injunctive judgment was unenforceable.
    There is no change in the judgment.

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts IV., V., and VI.

1

Appellants' petition for rehearing is denied.

The opinion in the above-entitled matter filed on July 21, 2015, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be certified for partial publication in the Official Reports, with the exception of parts IV., V., and VI., and it is so ordered.

Dated: _____          _____
                                   Kline, P.J.