Filed 9/14/23  Ramy & Associates v. Snyder CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| RAMY & ASSOCIATES, LLC, | B310502 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC556689) |
| v. | |
| DARRYL SNYDER, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, David Sotelo, Judge.  Affirmed.

Mac E. Nehoray for Plaintiff and Appellant.

Donald R. Davidson III for Defendant and Respondent.

———————————————

## *INTRODUCTION*

This appeal stems from a contentious partition and sale of commercial property in Simi Valley. Plaintiff and appellant Ramy & Associates (Ramy) at one time leased a car dealership on the property, then acquired an ownership stake in the land. After years of squabbling, the owners—primarily heirs of the original purchasers—agreed to the appointment of a referee to sell the property and to the trial court deciding all remaining issues.

On appeal, Ramy contends the court erred in how it apportioned the sale proceeds and referee fees. Because Ramy has both provided an inadequate appellate record and failed to cite any legal authority in support of its claims, Ramy has not met its burden of establishing error. We affirm.

## *BACKGROUND*

Edward Caraccia Sr. (father) and Lillie Fay Caraccia (mother) created a joint trust to hold assets as part of their estate plan.[1] When mother died in 2002, the joint trust was divided into a survivor's trust (hereafter father trust) and a marital trust (hereafter mother trust). Each trust was funded with the parent's respective separate property and one-half of their community property. The community property included 2350–

---

[1] The record does not contain any of the trust documents. The Caraccias, both of whom are now deceased, are not parties to this appeal.

2

2380 First Street in Simi Valley, a car dealership that Hormorz Ramy and/or his company had leased for decades.[2]

Thus, upon mother's death, a one-half interest in the Simi Valley property flowed from the joint trust to father trust, and the other half to mother trust.  Father was sole trustee of both trusts.  His children, Edward V. Caraccia II (Eddie) and Denise Economou (Denise), were joint beneficiaries of mother trust.  As best we can tell from the sparse record, father trust was, at this point, revocable with father the primary beneficiary and his children contingent beneficiaries.

Several years later, the family became embroiled in five internecine lawsuits.

***Lawsuit No. 1.***  In 2009, Denise and Eddie sued their father, alleging he was mismanaging the trusts and requesting an accounting and other relief.  In response, father resigned as trustee of both trusts.  He appointed Darryl Snyder (an accountant, and the respondent in this appeal) as successor trustee of father trust; Denise and Eddie eventually became joint successor trustees of mother trust.  As part of the settlement of the children's lawsuit, Snyder, as trustee, transferred a 25 percent interest in the Simi Valley property—half of father trust's ownership share—from father trust to mother trust.  At the close of litigation, the respective interests in the property

---

[2]     Hormorz Ramy is a managing partner of Ramy & Associates.  To distinguish the person from the business, we refer to Hormorz Ramy as Mr. Ramy and to Ramy & Associates as Ramy.  Although the record indicates Mr. Ramy and/or his company had leased the property for many years, it is not clear exactly who leased it, when, or how any arrangement ended.

were father trust–25 percent; mother trust–75 percent. As Eddie and Denise were the sole and equal beneficiaries of mother trust, as a practical matter, each of them owned 37.5 percent of the Simi Valley property.

As the children's lawsuit against father trust was reaching an end, three more lawsuits arose.

***Lawsuit No. 2.*** In 2010, father trust (but not mother trust) brought an unlawful detainer action against Mr. Ramy, as an individual, and a man by the name of Salem Arnout.[3] After a court trial, judgment for $205,757 was entered in favor of father trust and against Mr. Ramy and Arnout. The judgment was for past-due rent, plus costs.

***Lawsuit Nos. 3 and 4.*** A year later, Ramy sued father trust, alleging causes of action for recission and unjust enrichment based on overpayment of rent.[4] Then, a year after that, Snyder, on behalf of father trust, filed an action seeking

---

[3] Because the only document we have been provided from that lawsuit is the two-page judgment, the circumstances and issues involved are unclear. In particular, we do not know who Arnout is, why he was a defendant in the lawsuit, whether he is (or was) part of Ramy & Associates, or how he was involved with the various individuals in either the family dispute or the car dealership itself. He is not mentioned again in the record.

[4] Although both lawsuits involved the same property, the record does not reveal how it could be that Mr. Ramy was the individual who owed rent in Lawsuit No. 2 but Ramy the company allegedly overpaid rent in Lawsuit No. 3.

Mother trust was originally a co-defendant in Lawsuit No. 3, but Mr. Ramy dismissed the trust from the case at Eddie's request. Eddie and Mr. Ramy had been close friends for decades.

removal of Eddie and Denise as trustees of mother trust and requesting an accounting and appointment of successor trustees.

Meanwhile—though again, the record does not reveal the details—father married Patricia Caraccia (Patricia), and, in 2012, made her the sole beneficiary of father trust.

In late 2012 and early 2013, father trust settled both outstanding lawsuits (Lawsuits Nos. 3 and 4).

***Lawsuit No. 3 Settlement.*** In settlement of Ramy's suit against father trust, father trust executed a $100,000 promissory note in favor of Ramy, secured by a deed of trust on the Simi Valley property. The note (and accrued interest) would be due upon the earliest of: the sale of the Simi Valley property, or one year after father's death, or three years after the date of the settlement. The present appeal—part of the fifth piece of litigation among the parties—deals with who owes what to whom under the note that was signed in settlement of Lawsuit No. 3.

***Lawsuit No. 4 Settlement***. Father died in 2013, and father trust's suit against Denise and Eddie was settled five months later, soon after Eddie and Denise first learned that Patricia was the sole beneficiary of father trust. (Patricia had no interest in mother trust.)

In the agreement, Eddie, Denise, trustee Snyder, and Patricia—in their individual capacities and as beneficiaries and/or successor trustees of their respective trusts—agreed the Simi Valley property would be sold. Upon the sale, mother trust would reimburse father trust $36,501.57 in unpaid rent.[5] Mother

---

[5] Father trust and mother trust were owed rent in proportion to each trust's ownership stake in the property—eventually 25

5

trust also agreed to pay "fifty percent (50%) up to the sum of $50,000" of the amount owed on the promissory note executed as part of the 2012 settlement of Lawsuit No. 3 between father trust and Ramy.  Father trust agreed to pay the accrued interest on the note.[6]  The parties' agreement notwithstanding, mother trust refused to sell the property.

   ***Lawsuit No. 5.***  The present lawsuit followed in 2014.[7] During the pendency of the litigation, mother trust sold half of its

---

percent and 75 percent, respectively.  Though the record is opaque on the point, it appears mother trust was supposed to collect the full rent from the tenant—whomever that was—then pay 25 percent of the rent to father trust.  When father trust sued mother trust, however, mother trust started deducting its legal expenses from father trust's share of the rent before remitting the balance.  The $36,501.57 was for past-due rent that mother trust had wrongfully withheld during the suit.

[6]    Although the 2012 settlement between father trust and Ramy referenced this agreement (between father trust and mother trust) by providing that "[a]s a material inducement for [father trust] to enter into this Agreement," mother trust would pay "up to" $50,000 towards the note, neither mother trust nor Eddie and Denise were parties to father trust's agreement with Ramy.  It is also not clear from the record how the exact amount "up to $50,000" was to be calculated.

[7]    The suit apparently involved a complaint and a cross-complaint, but neither is part of the appellate record.  It appears plaintiffs and cross-defendants were Ramy, and Eddie and Denise, individually and on behalf of mother trust.  Snyder is the defendant and cross-complainant, individually and on behalf of father trust.  We have not been able to discern a basis for the suit against Snyder as an individual.  As such, we refer to him only in

75 percent ownership interest in the Simi Valley property to Ramy. Mother trust distributed to Denise the proceeds of the sale and retained ownership of the remaining 37.5 percent. The effect of this transaction was that Eddie became the sole trustee and beneficiary of mother trust.[8] The parties executed a settlement agreement in 2016, but that agreement was later rescinded, and the property was not sold.

So, in 2018, the parties stipulated to the appointment of a referee to sell the property. The parties also agreed that the court would adjudicate all remaining issues after a post-sale trial.

Later in 2018, father trust sold its 25 percent interest in the Simi Valley property to Ramy. Ramy then owned 62.5 percent of the property. Mother trust owned the remaining 37.5 percent. As part of the sale, father trust agreed to deduct $50,000 from the Ramy sale proceeds to repay its half of the principal owed under the earlier promissory note.

---

his capacity as trustee. The court ultimately concluded neither side had proven any of their causes of action. The parties do not directly challenge this decision on appeal.

[8] The mechanics of the sale and changes to the trust are not apparent from the record, and even the parties can't seem to agree on what happened. Ramy insists, without citation, that the proceeds from the sale were paid directly to Denise rather than to the trust. Whatever happened, at the end of the process, Ramy owned 37.5 percent of the property, mother trust (*to wit*: Eddie) owned 37.5 percent of the property, and Denise was no longer a beneficiary or trustee of mother trust. Father trust, which was not involved with this transaction, still owned the remaining 25 percent of the property.

The court entered an order confirming the sale. Although the proposed order had provided that the referee's costs and fees would be split evenly between the two sides, it was modified to state that costs and fees would be split "75/25 between the parties (75% by Plaintiff [Ramy, Eddie, and mother trust] and 25% by Defendant [Snyder and father trust])" with the referee to calculate the precise amounts due.

After a bench trial on the remaining issues, the court found father trust liable for half of the amount due on the promissory note, which it had already paid, plus half of the interest, which the court calculated to be $21,000. The court concluded Eddie owed Ramy the balance of the principal and interest on the note.[9] The court also concluded father trust was owed $36,501.57 from the sale proceeds. This amount is not included in the judgment, but the parties do not challenge that part of the court's decision.

The court subsequently entered judgment, and Ramy filed a timely notice of appeal.

## DISCUSSION

Ramy contends father trust—and not mother trust—owes it the remaining $50,000 plus interest due on the 2013 promissory note. It also argues the court incorrectly allocated the referee fees. Taken together, Ramy seeks $96,408.68. Because Ramy neither provides legal analysis and citation to authority to support these arguments nor affords us a record sufficient to evaluate them, Ramy has forfeited its claims.

---

[9] In support of its decision, the court relied in part on the 2016 settlement agreement; the court did not mention that the agreement had eventually been rescinded.

8

" 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) "It is not this court's role to construct arguments that would undermine the lower court's judgment and defeat the presumption of correctness." (*Needelman v. DeWolf Realty Co., Inc.* (2015) 239 Cal.App.4th 750, 762.)

It is the appellant's "responsibility . . . to support claims of error with meaningful argument and citation to authority." (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52; Cal. Rules of Court, rule 8.204(a)(1)(B).) Our role, by contrast, is to evaluate "legal argument with citation of authorities on the points made." (*People v. Stanley* (1995) 10 Cal.4th 764, 793.) "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." (*Badie v. Bank of Am.* (1998) 67 Cal.App.4th 779, 784–785.) We are not required to examine undeveloped claims or to supply arguments for the litigants. (*Maral v. City of Live Oak* (2013) 221 Cal.App.4th 975, 984–985.)

In its opening brief, Ramy cites one statute (to establish appealability) and one appellate opinion (for the standard of review). Although the errors asserted on appeal appear to involve interlocking issues of contract interpretation, property law, trusts, law of the case, civil procedure, and the impact of prior judgments, Ramy does not discuss—or cite to authority that discusses—any of these topics. We decline to do so on Ramy's behalf. (See *Mansell v. Board of Administration* (1994)

9

30 Cal.App.4th 539, 546 [it is not the court's function to serve as the appellant's backup counsel].)

Appellants not only bear the burden of proof on appeal but also bear the burden of providing us with a record that allows us to resolve the issues they raise. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295–1296.) The record before us does not paint a full picture of what happened in this case, much less assist us in resolving Ramy's claims of error.

For example, Ramy claims the court misallocated the referee fees between the parties. The court entered the order confirming sale on January 11, 2019, after the referee filed an application to confirm sale and Snyder filed a response. The record does not contain either the application or the response. Nor does the record contain a minute order or reporter's transcript of the status conference the court held on the issue. From this record, we cannot discern how the order came to be modified from 50/50 to 75/25 or why. We cannot tell whether Ramy objected to this modification. All we know is that a proposed order was filed and was changed. This is insufficient to establish reversible error. (*Pringle v. La Chapelle* (1999) 73 Cal.App.4th 1000, 1003 ["Without the proper record, we cannot evaluate issues requiring a factual analysis."].)[10]

---

[10] As we decide the case for the reasons stated in the opinion, we need not address respondent's argument that the judgment should be affirmed because the trial court's orders were consistent with the equitable powers the parties had bestowed on him.

### *DISPOSITION*

The judgment is affirmed.  Respondent Darryl Snyder shall recover his costs on appeal.

RUBIN, P. J.

WE CONCUR:

BAKER, J.          KIM. J.

11