Filed 7/31/25

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re L.M., a Person Coming Under the Juvenile Court Law. | |
| SONOMA COUNTY HUMAN SERVICES DEPARTMENT, Plaintiff and Respondent, v. K.P., Defendant and Appellant. | A171105 (Sonoma County Super. Ct. No. 24JD00047) |

Appellant K.P. (Mother) is the mother of L.M. (Minor), a dependent of the juvenile court who has been placed in a children's center outside of Mother's custody. She is also the mother of Z.S. (Sister), who is in her care and is not the subject of dependency proceedings. Over Mother's objection, the juvenile court ordered visitation between Minor and Sister, who was then three years old. Mother challenges this order on appeal, contending the statutory provisions authorizing the juvenile court to order visits between a dependent and a nondependent sibling are unconstitutional, in that they fail

---

* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part IV of the Discussion.

to respect the parent's right to direct the upbringing of the nondependent sibling.

We recognize the seriousness of the constitutional issue Mother raises, in that the visitation statutes she challenges do not expressly protect a parent's constitutional right to direct the upbringing of a sibling who is not a dependent of the juvenile court. In this case, however, we affirm.

## BACKGROUND

Minor was 15 years old when the Sonoma County Human Services Department (the Department) filed a dependency petition (Welf. & Inst. Code, § 300)[1] on his behalf in February 2024.

The jurisdiction/disposition report described Mother's difficulties parenting Minor at that time. Minor reported that Mother yelled at him, threw things at him, and threatened to kick him out of the home. There was also a report that Minor had caused property damage in the home, did not follow rules, and skipped school often. Minor ran away from home, and Mother reported that when she picked him up, Minor made "fatalistic" threats directed toward himself and her as she tried to get him to attend school. As a result of the threats, Minor was hospitalized briefly then booked into juvenile hall for having threatened Mother. Afterward, Mother refused to pick him up from juvenile hall or to allow him to return home because she was concerned about her own safety and that of Sister.

Before this time, the family had an extensive child welfare history that included reports of emotional abuse, physical abuse, and neglect of Minor by Mother or her romantic partners. Between September 2022 and June 2023, the family had voluntary family maintenance services on behalf of Minor and

---

[1]All undesignated statutory references are to the Welfare and Institutions Code.

2

Sister due to domestic violence in the home, apparently between Mother and Sister's father, D.S. At the beginning of those services, Mother separated from D.S. and sought shared custody of Sister. In February 2024, the Department concluded Mother was meeting all of Sister's physical and mental health needs, and it expressed no safety concerns about Sister.

On April 24, 2024, the juvenile court sustained these allegations as to Minor: that he was suffering or at substantial risk of physical harm because Mother was unwilling or unable to care for him, and Minor's father R.M. (Father) had not taken adequate protective action (§ 300, subd. (b)); that Mother had not made alternative provisions for support (§ 300, subd. (g)); and that Minor was suffering or at substantial risk of serious emotional damage (§ 300, subd. (c)). The court ordered Minor placed outside the home at a children's center. The court authorized the Department to allow trial visits with Mother and with Father, who lives in another state.

On June 5, 2024, the Department asked the juvenile court to order supervised visits between Minor and Sister. Counsel for the Department told the court that Minor and Sister were close and would both like visits, and that the Department was of the view it would be in both their interests to see each other in a safe setting. The basis for these statements about Sister's wishes is unclear, since Mother apparently declined to make Sister available to talk with the social worker. Mother expressed concern that if she allowed visits between the children, D.S. might use the visits against her in their ongoing custody dispute regarding Sister. For his part, Minor had told the social worker of his great love and care for Sister, and Minor's counsel agreed with the Department's request for sibling visits.

Through counsel and on her own behalf, Mother explained she did not oppose telephonic or video visits between Minor and Sister, but she was

3

concerned that Minor's behavior was "unregulated," that he sent Mother text messages making clear he was smoking marijuana with his friends, that he did not follow rules, and that he had threatened to harm himself, so Mother was concerned that Sister might be exposed to inappropriate behavior during in-person visits. Counsel for Minor and the Department expressed skepticism that Mother's expressed concerns were genuine, suggesting that Mother was seeking to withhold visits in order to control Minor's behavior and because she was angry with him.

On June 28, 2024, the juvenile court denied the request on the ground it lacked jurisdiction to compel visits between Minor and his nondependent sister over Mother's objection. The court relied on *In re Luke H.* (2013) 221 Cal.App.4th 1082 (*Luke H.*), not realizing that the case had been superseded by statute. (See § 16002, subd. (a)(2).)

The Department, joined by Minor, then moved for reconsideration of the ruling on the ground that section 16002, subdivision (a)(2) granted the juvenile court jurisdiction to order visits between a dependent child and a nondependent sibling living with the mutual parent. Mother opposed the motion on the grounds that the standards for reconsideration had not been met, and she argued that the juvenile court lacked jurisdiction to order visitation with a nondependent child. Her opposition did not mention the state or federal Constitution, nor did it assert her rights as Sister's parent.

The hearing on the motion took place on August 8, 2024 before a different judge. This time, the juvenile court concluded that, contrary to the June 28, 2024 order, the court did have jurisdiction to order visitation between Minor and Sister. County counsel and counsel for Minor indicated the parties were discussing a visitation plan but had not yet resolved the matter, and the court suggested "going into a settlement conference mode."

4

After an unreported discussion, the juvenile court then went back onto the record and issued a ruling that vacated the earlier order and "exercis[ed] its discretion [to] order sibling visitation." Without further explaining its reasoning, the court ordered that Minor and Sister have video visits once a week for two weeks, then in-person visits every week. On August 12, 2024, the court issued a written ruling specifying that the Department could maintain virtual visits if it determined that would be appropriate; that the visits were to be supervised by the Department; and that Mother would not be included in the visits unless the Department concluded it was appropriate for her to participate as well.

This timely appeal ensued.

## DISCUSSION

### I.

Before 2015, case law made clear that juvenile courts lacked authority to order visitation between a dependent child and a nondependent sibling. This rule was established in *In re A.R.* (2012) 203 Cal.App.4th 1160 (*A.R.*), which explained there was no statutory authority for a visitation order in such circumstances. (*Id.* at p. 1171.) The following year, *Luke H.* expanded on the holding in *A.R.*, affirming a juvenile court order denying the petition of a dependent teenager, Luke, who sought to compel his mother to allow visits with his nondependent sister. (*Luke H.*, *supra*, 221 Cal.App.4th at p. 1084.) Luke attempted to distinguish *A.R.* on the ground that his mother, unlike the sibling's custodial parent in *A.R.*, was before the juvenile court and subject to its jurisdiction in Luke's dependency case. (*Id.* at p. 1089, citing *A.R.*, *supra*, 203 Cal.App.4th 1160.) But the court in *Luke H.* rejected this distinction, explaining that it was not the juvenile court's jurisdiction over the mother that mattered. "What matters is that the juvenile court had no statutory

5

authority to enter a visitation order regarding a nondependent sibling."
(*Luke H.*, at p. 1089; see *id.* at pp. 1090–1091.)  And, the court explained,
Luke's right to visit his sibling was not constitutionally protected against the
decision of the sibling's custodial parent not to allow the visitation.  (*Id.* at
p. 1091.)

The Legislature then amended the relevant statutes to provide the
authority that the *Luke H.* court had found lacking.  (Stats. 2014, ch. 772,
§ 17; Stats. 2014, ch. 773, §§ 7, 10.5.)  Specifically, the Legislature amended
section 388 to provide in pertinent part:  "A child or nonminor dependent who
is *a dependent of the juvenile court* may petition the court to assert a
relationship as a sibling related by blood, adoption, or affinity through a
common legal or biological parent to a child who is in the physical custody of
a common legal or biological parent, and *may request visitation with the
nondependent sibling in parental custody*."  (§ 388, subd. (b)(2), italics added.)
The amended statute goes on to provide that "[p]ursuant to subdivision (b) of
Section 16002, a request for sibling visitation may be granted unless it is
determined by the court that sibling visitation is contrary to the safety and
well-being of any of the siblings."[2]  (§ 388, subd. (b)(3).)

In turn, section 16002 now declares a legislative intent "to preserve and
strengthen a child's sibling relationship so that when a child has been

---

[2] The statutory reference to "subdivision (b)" of section 16002 may be a
scrivener's error, as it is subdivision (a)(2), rather than subdivision (b), of
section 16002 that expressly addresses visitation with a sibling who remains
in parental custody.  Subdivision (b) addresses the importance of "plac[ing]
siblings together in the same placement," when multiple siblings are subject
to out-of-home placements, and it directs the court to provide for "ongoing
and frequent interaction" among siblings.  (§ 16002, subd. (b); see also *Luke
H.*, *supra*, 221 Cal.App.4th at p. 1090 [then-existing section 16002 "has no
application . . . where only one sibling was removed"].)

removed from the child's home and the child has a sibling or siblings who remain in the custody of a parent subject to the court's jurisdiction, the court has the authority to develop a visitation plan for the siblings, unless it has been determined that visitation is contrary to the safety or well-being of any sibling." (§ 16002, subd. (a)(2).)

These provisions supply the statutory authorization for sibling visits that was lacking at the time *A.R.* and *Luke H.* were decided, but that does not end our inquiry. Mother challenges the constitutionality of these statutes, both facially and to the extent they are invoked as authority for the juvenile court's visitation order here. She also argues, in the alternative, that the juvenile court abused its discretion in applying the statutes to impose sibling visitation here.

## II.

Mother's constitutional challenge raises serious issues, grounded on a United States Supreme Court case addressing parental rights in the context of a grandparent's request for visitation with a child who was not a dependent of the court. In *Troxel v. Granville* (2000) 530 U.S. 57 (*Troxel*), the high court considered a Washington statute that permitted " '[a]ny person' to petition a superior court for visitation rights 'at any time,' " and authorized a court to order visitation with a child "whenever 'visitation may serve the best interest of the child.' " (*Id.* at p. 60 (plur. opn. of O'Connor, J.), citing Wash. Rev. Code, § 26.10.160(3).) Pursuant to this statute, paternal grandparents sought regular overnight visits with the daughters of their deceased son, and the trial court ordered the visits over the objection of the children's mother. (*Troxel*, at pp. 60–61 (plur. opn.).) The trial court found visitation was in the children's best interests because the girls would gain from contact with

7

extended family and from exposure to music through the grandparents. (*Id*. at pp. 61–62.)

Six justices on the high court found the broad Washington visitation statute to be unconstitutional, either facially or as applied. The dispositive principle, these justices agreed, was that parents have a "fundamental liberty interest[]" in the care, custody, and control of their children, an interest that includes "the right 'to direct the upbringing and education of children under their control.' " (*Troxel, supra*, 530 U.S. at p. 65 (plur. opn.); see also *Troxel*, at p. 77 (conc. opn. of Souter, J.) [Court has recognized, since *Meyer v. Nebraska* (1923) 262 U.S. 390, 399, "that a parent's interests in the nurture, upbringing, companionship, care, and custody of children are generally protected by the Due Process Clause of the Fourteenth Amendment"]; *Troxel*, at p. 80 (conc. opn. of Thomas, J.) ["I agree with the plurality that this Court's recognition of a fundamental right of parents to direct the upbringing of their children resolves this case"].)

The Washington Supreme Court had struck down the visitation statute as unconstitutional on its face, and two of the justices would have affirmed on that basis. (*Troxel, supra*, 530 U.S. at pp. 75–77, 80.) "*Meyer*'s repeatedly recognized right of upbringing would be a sham if it failed to encompass the right to be free of judicially compelled visitation by 'any party' at 'any time' a judge believed he 'could make a "better" decision' than the objecting parent had done," Justice Souter explained. (*Id*. at p. 78 (conc. opn. of Souter, J.).) "[T]he State of Washington lacks even a legitimate governmental interest—to say nothing of a compelling one—in second-guessing a fit parent's decision regarding visitation with third parties," Justice Thomas added. (*Id*. at p. 80 (conc. opn. of Thomas, J.).)

The plurality preferred a narrower approach, concluding that, as applied, the statute unconstitutionally infringed on the fundamental right of the mother in that case to parent her children. (*Troxel*, *supra*, 530 U.S. at p. 75 (plur. opn.).) The plurality shared Justice Souter's fundamental concern that the statute "permit[ted] any third party seeking visitation to subject any decision by a parent concerning visitation of the parent's children to state-court review," without *any* deference or presumption of validity being accorded to the parent's decision. (*Id.* at p. 67; see *id.* at pp. 76–77.) But, noting that every state had a statute allowing for some court-ordered grandparent visitation, the plurality was "hesitant to hold that specific nonparental visitation statutes violate the Due Process Clause as a *per se* matter." (*Id.* at p. 73 & fn. 1.)

Instead, the plurality turned to the facts of the case before it, concluding the trial court's order had been based on nothing more than a "simple disagreement between the [court and the parent] concerning [the] children's best interests." (*Troxel*, *supra*, 530 U.S. at p. 72 (plur. opn.).) There was no allegation or finding that the mother was unfit, an important fact because "there is a presumption that fit parents act in the best interests of their children." (*Id.* at p. 68, citing *Parham v. J.R.* (1979) 442 U.S. 584, 602.) The problem with the ruling that the plurality saw was "not that the [trial court] intervened, but that when it did so, it gave no special weight at all to [the mother's] determination of her daughters' best interests," instead presuming the grandparents' request should be granted unless the parent showed visitation would adversely affect the children. (*Troxel*, at p. 69.) This was a mistake, the plurality concluded: "if a fit parent's decision of the kind at issue here becomes subject to judicial review, the court must accord at least some special weight to the parent's own determination." (*Id.* at p. 70.)

9

The potential implications for our case should be obvious. Although Mother is subject to the jurisdiction of the juvenile court as Minor's parent, she remains presumed fit to direct the upbringing of Sister, over whom the juvenile court has no jurisdiction. "Ascertainment of parental fitness . . . is a child-by-child inquiry." (*In re N.R.* (2023) 87 Cal.App.5th 1187, 1190.) The juvenile court's *parens patriae* role with respect to Minor gives it no similar right to make decisions in Mother's stead regarding Sister's best interests.

Yet the statutory scheme that Mother challenges does not expressly require the juvenile court to defer to, or even consider, the views of the parent of a nondependent sibling with whom visitation is sought. In this regard, the statutory scheme for sibling visitation lacks aspects of California's grandparent visitation statute that the California Supreme Court considered significant, when it upheld that statute's constitutionality after *Troxel*. In *In re Marriage of Harris* (2004) 34 Cal.4th 210, our high court concluded Family Code section 3104 was constitutional, both on its face and as applied, in part because the statute "imposed a rebuttable presumption affecting the burden of proof that grandparent visitation was not in the child's best interest" if this was the view of the child's parents. (*Harris*, at pp. 214, 221.) And the statute expressly required the court to " '[b]alance[] the interest of the child in having visitation with the grandparent against the right of the parents to exercise their parental authority.' " (*Id.* at p. 221.) California's statute governing grandparent visitation passes constitutional muster, in short, because it does not "contravene[] the traditional presumption that a fit parent will act in the best interest of his or her child." (*Troxel, supra*, 530 U.S. at p. 69 (plur. opn.).) It instead gives "special weight" to the parents' determination of their child's best interest. (*Id.* at pp. 69, 70.)

In considering visitation with a sibling who is not a dependent of the juvenile court, the Constitution requires no less. (See *Guardianship of L.V.* (2006) 136 Cal.App.4th 481, 493 ["custodial parent's decisions regarding visitation are entitled to presumptive validity and must be accorded 'special weight,' but they are not immune from judicial review"]); see also *In re Hirenia C.* (1993) 18 Cal.App.4th 504, 519 [courts "give a large measure of deference to parental autonomy when considering . . . visitation rights for a nonparent"].) Although the language of section 388, subdivision (b) and section 16002, subdivision (a) does not expressly require the court to consider a parent's views, in applying these statutes the court must, of course, also abide by the United States Constitution.[3] This means that in deciding whether to order sibling visitation, the court must consider and respect the decision of a parent who is presumed fit, even if the court ultimately overrules a parental objection. (*Troxel*, *supra*, 530 U.S. at pp. 69–70 (plur. opn.).)

## III.

The problem for Mother is that, although she objected to visitation with Sister, she did not raise a constitutional challenge in the juvenile court, and an issue not raised in the lower court is generally deemed forfeited.

---

[3] Although Mother does not separately challenge the constitutionality of California Rules of Court, rule 5.570, her argument suggests that it, too, fails properly to account for the parental rights over a nondependent child. Subpart (h)(1)(E) of this rule states, "If the request [pursuant to section 388] is for visitation with a sibling who is not a dependent of the court, the court may grant the request unless the court determines that the sibling remains in the custody of a mutual parent who is not subject to the court's jurisdiction or that sibling visitation is contrary to the safety and well-being of any of the siblings." While this directive accurately captures the language of the relevant statutes, it does not remind courts of their constitutional obligation to give special consideration to the views of a presumed fit parent.

11

(*Needelman v. DeWolf Realty Co., Inc.* (2015) 239 Cal.App.4th 750, 763.) We do have discretion to consider an issue not properly preserved, particularly when it involves undisputed facts and a pure question of law. (*Ibid.*; *Wittenberg v. Bornstein* (2020) 51 Cal.App.5th 556, 567.) And it is especially appropriate to do so when the party brings a facial challenge to the constitutionality of a statute, challenging " 'the text of the measure itself, not its application to the particular circumstances of an individual.' " (*People v. Alexander* (2023) 91 Cal.App.5th 469, 474; see also *In re Sheena K.* (2007) 40 Cal.4th 875, 888–889.)

But the facial challenge to these statutes fails. We invalidate a statute as unconstitutional on its face only if it " '[p]oses a present total and fatal conflict with applicable constitutional prohibitions,' " or at least is shown to be " 'unconstitutional "in the generality or great majority of cases." ' " (*California School Boards Assn. v. State of California* (2019) 8 Cal.5th 713, 723–724.) Neither standard is met here.

The challenged statutes authorize, but do not require, juvenile courts to order sibling visitation. Section 388, subdivision (b)(3) states, "a request for sibling visitation *may* be granted . . . ." (Italics added.) Section 16022, subdivision (a)(2) states, "the court *has the authority* to develop a visitation plan for the siblings, unless it has been determined that visitation is contrary to the safety or well-being of any sibling." (Italics added.) Nothing about this language prevents the juvenile court from giving special weight to a parent's views as to whether visitation should occur. Indeed, nothing in the statutory text prevents a court from refusing to order sibling visitation because a parent objects. The statutes direct that a court may not order visitation if it finds doing so would be injurious to any sibling, but not the converse. That is, the statutes do not compel the court to order visitation in a case where the

12

court makes no injury finding. Because the statutes do not compel the court to order sibling visitation in any particular case, they are not generally, totally, or facially unconstitutional.

The possibility of an as-applied constitutional challenge to sections 388 and 16002 remains, but it is for another day. We decline to decide the as-applied challenge because the record in this case does not indicate, one way or the other, what weight the juvenile court gave to Mother's concerns about visitation between Minor and Sister. The court ordered the visits after an off-the-record, "settlement conference mode" conversation without disclosing what the parties and the court had discussed, what concerns Mother had raised, or how the court had reached its decision. We are left with nothing that allows us to conclude whether, in this case, the juvenile court applied constitutional standards correctly.

## IV.

Mother contends that the juvenile court abused its discretion under the governing statutes by ordering sibling visits even though Minor and the Department failed to provide evidence sufficient to show visitation was consistent with Sister's safety and well-being.

In reviewing the visitation order for abuse of discretion, we do not reverse unless there is a " ' "clear showing of an abuse of discretion." ' " (*In re J.P.* (2019) 37 Cal.App.5th 1111, 1119.) The test is " ' " 'whether the [juvenile] court exceeded the bounds of reason[, and w]hen two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the [juvenile] court.' " ' " (*In re Alexandria M.* (2007) 156 Cal.App.4th 1088, 1095–1096.)

Mother has not satisfied this standard. In connection with the authorization for a juvenile court to order visitation between siblings, the

13

Legislature has declared an intent to "preserve and strengthen" their relationships (§ 16002, subd. (a)(2)), and the order furthers this policy. Minor supported the request to allow such visits, and the record shows he has expressed his "great love and care" for sister. Mother has expressed her concern that Minor might behave inappropriately during visits with Sister, but there is no indication that Minor has ever harmed Sister, and his inappropriate outbursts appear to be directed at Mother. Consistent with that concern, Mother will not be present at visits, at least initially. However, the Department must supervise visits for their entire duration, Mother may arrange for a second licensed visit-supervisor, and, if possible, a staff member from the children's center where Minor is living will be with him during the virtual visits. The first two visits must take place virtually—and can, presumably, be interrupted if Minor behaves badly. Mother, as well as the attorneys in the case, will receive reports about how the visits went, and there is nothing to prevent her from raising any concerns about their conduct with the Department or the juvenile court. Even after the initial visits, the Department has discretion to continue with virtual rather than in-person visits if this appears more appropriate. On this record, the juvenile court was well within its discretion to conclude its order furthered the legislative purpose and addressed any reasonable concerns about Sister's well-being during visits with Minor.

Mother also suggests that the request for visits should have been brought under section 388, and that under that statute and rule 5.570 of the California Rules of Court the Department, rather than she, bears the burden of proof. Whatever merit her challenge to the form of the request might have, she has forfeited it by failing to raise it below. (See *In re Dennis H.* (2001) 88 Cal.App.4th 94, 98 [appellate court ordinarily does not consider procedural

14

defects where objection was not raised below].)  Mother also argues that the Department bears the burden of proof by clear and convincing evidence.  This case is not an appropriate vehicle to consider that legal issue, as the record does not disclose what standard the juvenile court applied or how it allocated the burden of proof.  And in any event, applying well-settled principles of review, we are satisfied that Mother has not shown a clear abuse of discretion.

## DISPOSITION

The order granting reconsideration and ordering visitation between Minor and Sister is affirmed.

TUCHER, P. J.

WE CONCUR:

PETROU, J.
RODRÍGUEZ, J.

15

Trial Court:        Sonoma County Superior Court

Trial Judge:        Hon. Lawrence E. Ornell

Counsel:            Katie Curtis for Defendant and Appellant

                                   Sonoma County Counsel; Gordon-Creed, Kelly, Holl & Sugerman, Jeremy Sugerman, and Anne H. Nguyen for Petitioner and Respondent

*In re Legend M.* (A171105)