Filed 8/22/25  Sandra V. v. Nicholas A. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SANDRA V., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> NICHOLAS A., <br><br> Defendant and Respondent. | B339669 <br><br> (Los Angeles County <br> Super. Ct. No. 24STRO02715) |
| NICHOLAS A., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> SANDRA V., <br><br> Defendant and Appellant. | B339596 <br><br> (Los Angeles County <br> Super. Ct. No. 24STRO03452) |

APPEAL from orders of the Superior Court of Los Angeles County, Michael R. Powell, Judge.  Affirmed.

Sandra V., in pro. per., for Plaintiff and Appellant (No. B339669) and Defendant and Appellant (No. B339596).

Oscar D. Sandoval for Defendant and Respondent (No. B339669). No appearance for Plaintiff and Respondent (No. B339596).

_____

This is a consolidated appeal from a two-year domestic violence restraining order (DVRO) protecting plaintiff and respondent Nicholas A. from defendant and appellant Sandra V., his aunt, and the denial of a competing restraining order request by Sandra against Nicholas.[1] The DVRO protecting Nicholas, inter alia, prohibits Sandra from contacting him, coming within 100 yards of him when he is outside the residence he shares with Sandra, and being within 10 feet of Nicholas when the two of them are in the dwelling. In support of his request for the order, Nicholas presented evidence that Sandra has attempted to remove him from the residence by hurling homophobic slurs at him, opening his mail, breaking into and entering his bedroom unannounced, and directing a man Nicholas estimated was four times his size to enter Nicholas's room and demand he leave the residence. Conversely, Sandra asserted that she, her children, and her nanny needed a DVRO protecting them from Nicholas because he had been verbally and physically abusive.

_____

[1] As a person seeking protection from alleged domestic violence, we refer to Nicholas A. initially by his first name and last initial (Cal. Rules of Court, rule 8.90(b)(1)), and thereafter by his first name only for ease of reference. We do the same for Sandra V. No disrespect is intended.

On appeal, Sandra, representing herself, argues the trial court applied the wrong legal standard in determining whether to issue the order protecting Nicholas, the DVRO lacks sufficient evidentiary support, and the court erred by ordering her to leave the residence. Her first claim of error fails because the record shows the court found she disturbed Nicholas's peace, which is abuse under the Domestic Violence Prevention Act (DVPA; Fam. Code,[2] § 6200, et seq.). We reject Sandra's evidentiary challenges to the DVRO because she fails to demonstrate error under the deferential substantial evidence standard. Sandra's argument that the court excluded her from the residence is unavailing because the court expressly denied Nicholas's request for an order requiring Sandra to move out of the residence. Sandra's remaining claims of error fail because they either lack evidentiary support or she does not raise them properly. We thus affirm the DVRO protecting Nicholas and the order denying Sandra's request for a DVRO.

**FACTUAL AND PROCEDURAL BACKGROUND**

We summarize only those facts pertinent to our resolution of this appeal.

On April 18, 2024, Sandra filed, in pro per, a request for a DVRO, the contents of which she declared to be true under penalty of perjury, in which Sandra sought an order protecting her, her two children, and her nanny from Nicholas.[3] In the request and its attachments, Sandra raised a litany of allegations

---

[2] Undesignated statutory citations are to the Family Code.

[3] In our Discussion, part A, *post*, we augment the record to include Sandra's and Nicholas's requests for a DVRO, along with their respective attachments.

against Nicholas, whom she identified as a nephew living at her residence at the time she filed the request. Although the request is not a model of clarity, Sandra apparently asserted, inter alia, (1) in November 2023, Nicholas "chased [Sandra] around [her] car, threw trash on [her] car[,] . . . damaged furniture in [her] room," and cut her right index finger with a steel rod, causing it to bleed; (2) on other occasions, Nicholas yelled at Sandra and her children, threatened to kill her, stalked her, hit the doors and walls of the home, and played heavy metal music at a loud volume while Sandra's children were trying to nap; (3) Nicholas refused to (a) get a job, (b) clean his room and his bathroom, (c) move his disabled vehicle out of the driveway, (d) pay any of the expenses for the home, and (e) vacate the home; and (4) Nicholas "s[old] and use[d] illegal street drugs." Sandra attached four exhibits to her request, which she identified as (A) "car issues"; (B) "drug issues/violence"; (C) "Police Reports"; and (D) "Notice to vacate [&] 3 day notice." Among other things, Sandra sought a court order requiring Nicholas to move out of the residence.

On May 15, 2024, Nicholas filed a request for a DVRO against Sandra, the contents of which Nicholas declared were true under penalty of perjury; attached to the request were Nicholas's declaration and several exhibits.[4] Sandra is the sister of Nicholas's deceased mother. Nicholas, Sandra, and Nicholas's sister live at a residence in Montebello that used to be owned by Nicholas's late grandmother. According to Nicholas, the home now belongs to a trust for which Nicholas and his sister are

---

[4] The remainder of the textual paragraph accompanying this footnote and the following three paragraphs summarize portions of these documents.

beneficiaries and Sandra is the trustee. Since his grandmother's death, Sandra has attempted to "remove [Nicholas] from [the r]esidence."

"Every single week [Nicholas would] get berated and harassed by [Sandra]. ***[He would] get called a 'faggot[,]'[ ] 'fag[,]'[ ] 'low life[,]'[ ] amongst other insults.***" Additionally, Sandra "consistently br[oke] into [Nicholas's] bedroom, unannounced, to see what [Nicholas was] doing," and Sandra went "through [Nicholas's] computer and emails" in his room when he was not home. The door to Nicholas's bedroom is a "pocket door that slides and has a hook as a lock and does not have a standard door knob[, s]o it is easy for anyone to just use a fork or knife to slide the hook up and come into [his] room." Sandra also "open[ed Nicholas's] mail on [a] daily basis."

On April 16, 2024, the door to Nicholas's room "open[ed] really fast" and he saw Sandra and a man who was approximately 6 feet 4 inches tall, weighed about 275 pounds, and was "maybe 4 times [Nicholas's] size." "They both rushed into [his] room and [Nicholas] got really scared." After Sandra looked at Nicholas and yelled, " '[T]here he is!' "; the man "step[ped] up really close to [Nicholas] in a menacing and threatening ma[nner], with a hostile looking face[,] . . . . [and said] in a loud and hostile manner, '[Y]ou need to leave!' " Nicholas "just froze" because he believed "if [he] had stood up that the man was going to punch [Nicholas]."

Nicholas attested that one of the exhibits attached to his request for a DVRO is a screenshot of a text message and an accompanying photograph of the large man, which text and photograph Sandra had sent to Nicholas's other aunt (Diane). In the text message, Sandra identified the man as her "new property

5

manager," and asserted he was 6 feet 3 inches tall, had a "[b]lack belt," and was "very [i]ntimidating."

The trial court heard the parties' DVRO requests on June 7, 2024. Sandra, Nicholas, and Nicholas's counsel appeared at the hearing. Sandra, Nicholas, Diane, and Hector Gonzalez testified.[5] At the conclusion of the proceeding, the trial court granted Nicholas's request for a two-year DVRO and denied Sandra's request for a restraining order. Among other things, the DVRO bars Sandra from contacting Nicholas, obligates Sandra to complete a 52-week batterer intervention program, and requires Sandra to stay (a) at least 100 yards away from Nicholas while outside the residence, and (b) at least 10 feet away from Nicholas "[w]hen at home[ or in] the curtilage of said home."

Sandra timely appealed from the DVRO and the denial of her request for a restraining order. Sandra filed an opening brief in pro per in both appeals. Although Nicholas did not file an appellate brief in the appeal from the DVRO, his counsel did file a respondent's brief in the appeal from the order denying Sandra's request for a DVRO, and Sandra filed a reply thereto. We consolidated the two appeals for purposes of decision only.

## APPLICABLE LAW AND STANDARDS OF REVIEW

### A. The DVPA

The DVPA authorizes a court to issue a DVRO " ' " 'to restrain any person for the purpose of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved' " upon "reasonable proof of a past act or acts of

---

[5] Sandra represented to the trial court that Gonzalez had witnessed several altercations between her and Nicholas.

6

abuse." ' [Citation.]" (See *Parris J. v. Christopher U.* (2023) 96 Cal.App.5th 108, 112, 115 (*Parris J.*).) "The DVPA defines 'abuse' as 'any of the following: [¶] (1) To intentionally or recklessly cause or attempt to cause bodily injury. [¶] (2) Sexual assault. [¶] (3) To place a person in reasonable apprehension of imminent serious bodily injury to that person or to another. [¶] (4) To engage in any behavior that has been or could be enjoined pursuant to Section 6320.' [Citation.] 'Abuse is not limited to the actual infliction of physical injury or assault.' [Citation.]" (*Parris J.*, at pp. 115–116, quoting § 6203, subds. (a) & (b).)

"Behavior that may be enjoined under section 6320 includes 'disturbing the peace of the other party[.]' [Citation.]" (See *Parris J., supra*, 96 Cal.App.5th at p. 116, quoting § 6320, subd. (a).) The DVPA does not prescribe "an objective, reasonable person standard [for] deciding whether a person has 'disturb[ed] the peace of the other party' within the meaning of section 6320." (See *Parris J.*, at p. 121.) Rather, " ' "disturbing the peace of the other party" refers to conduct that, based on the totality of the circumstances, destroys the mental or emotional calm of the other party. This conduct may be committed directly or indirectly, including through the use of a third party, and by any method or through any means . . . .' [Citation.]" (*Id.* at p. 116, quoting § 6320, subd. (c).)

"[T]he court may issue a DVRO based solely on the affidavit or testimony of the person requesting the order . . . 'after notice and a hearing.' [Citations.]" (See *In re Marriage of D.S. & A.S.* (2023) 87 Cal.App.5th 926, 934; see also *Sanchez v. Bezos* (2022) 80 Cal.App.5th 750, 758, fn. 1 & 763, fn. 3 [noting the Supreme Court has found that Code Civ. Proc., § 2015.5 " 'allows use of "unsworn" declarations made under penalty of perjury' in place of

an affidavit"].) " 'The burden of proof is by a preponderance of the evidence.' " (*Parris J.*, *supra*, 96 Cal.App.5th at p. 116.)

## B.    Standards of Review

" 'We review the grant of a DVPA restraining order for abuse of discretion, and, to the extent we are called upon to review the court's factual findings, we apply the substantial evidence standard of review. . . .' [Citation.]" (*Parris J.*, *supra*, 96 Cal.App.5th at p. 116.)

" 'Review for abuse of discretion is . . . focused not primarily on the evidence but the application of a legal standard.  A court abuses its discretion only when " ' "the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." ' " [Citation.]' [Citation.] Whether a trial court applied the correct legal standard in exercising its discretion is a question of law that we review de novo." (*In re A.P.* (2024) 103 Cal.App.5th 1137, 1143.)

"[The substantial evidence] standard of review is highly deferential.  It has three pillars.  First, we accept all evidence supporting the trial court's order.  Second, we completely disregard contrary evidence.  Third, we draw all reasonable inferences to affirm the trial court. . . .  Under this standard of review, parties challenging a trial court's factfinding bear an ' "enormous burden." ' [Citation.]" (See *Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 581–582 (*Schmidt*).)

In applying the substantial evidence standard, " '[w]e must accept as true all evidence supporting the trial court's findings, resolving every conflict in favor of the judgment.  [Citation.]  We do not determine credibility or reweigh the evidence.  [Citation.] If substantial evidence supports the judgment, reversal is not

warranted even if facts exist that would support a contrary finding.' [Citation.]" (*Parris J.*, *supra*, 96 Cal.App.5th at p. 116.)

Furthermore, " 'the doctrine of implied findings' " provides that in a case in which the trial court acted as the factfinder, " 'the reviewing court must infer . . . that the trial court impliedly made every factual finding necessary to support its decision.' [Citation.]" (See *Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981.)

As for Sandra's appeal from the denial of her request for a DVRO, " 'the question [is] . . . whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question [is] whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." [Citation.]' [Citation.]" (See *Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838.)

" ' "A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness." [Citation.]' [Citation.] Thus, ' " 'it is the appellant's responsibility to affirmatively demonstrate error' " ' by ' " 'supply[ing] the reviewing court with some cogent argument supported by legal analysis and citation to the record.' " [Citation.]' [Citations.] The appellant bears this burden of rebutting the presumption of correctness accorded to the trial court's decision, regardless of the applicable standard of review." (*Association for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2023) 94 Cal.App.5th 764, 776–777.)

These same rules of appellate procedure apply to self-represented parties. (See *Scholes v. Lambirth Trucking Co.*

(2017) 10 Cal.App.5th 590, 595.) Although "[a] party may choose to act as his or her own attorney[, w]e treat such a party like any other party," meaning "he or she ' "is entitled to the same, but no greater consideration than other litigants and attorneys. [Citation.]" ' [Citation.]" (See *ibid.*) Additionally, Nicholas's failure to file a respondent's brief in one of the two appeals before us does not relieve Sandra of her burden to demonstrate the trial court erred. (See Cal. Rules of Court, rule 8.220(a)(2) [providing that if no respondent's brief is filed, "the court may decide the appeal on the record, the opening brief, and any oral argument by the appellant"].)

## DISCUSSION

### A. We Augment the Record To Include Sandra's and Nicholas's Respective DVRO Requests, and We Deny Sandra's Request for Judicial Notice

As a preliminary matter, we note Sandra's and Nicholas's DVRO requests do not appear in the clerk's transcripts. We exercise our discretion to augment the record to include these two requests, along with their respective attachments. (See Cal. Rules of Court, rule 8.155(a)(1)(A) ["At any time, on . . . its own motion, the reviewing court may order the record augmented to include: [¶] . . . Any document filed or lodged in the case in superior court."].)

Additionally, in the appeal from the denial of her request for a DVRO, Sandra moves for judicial notice of "the existence and content of a currently pending Unlawful Detainer/Eviction . . . action filed . . . against . . . [Nicholas,] . . . et al." (Boldface omitted.) Sandra attaches to her request a document she identifies as "a file-stamped copy of the Unlawful

10

Detainer Summons and Complaint," which has a stamp indicating the document was filed in the unlawful detainer action on July 1, 2025.[6]  (Boldface omitted.)  Sandra asserts that the unlawful detainer "action names [Nicholas] as an unauthorized occupant and alleges causes of action including nuisance, waste, vandalism, and unlawful possession," and that "[t]hese acts mirror his prior conduct—including inflicting bodily harm on [Sandra]—thus directly undermining his status as a 'protected' party."

"When reviewing the correctness of a trial court's judgment, we only consider matters that were part of the record at the time the court entered the judgment; ' "[t]his rule preserves an orderly system of [litigation] by preventing litigants from circumventing the normal sequence of litigation." [Citation.]' [Citation.]" (*In re Marriage of Brewster & Clevenger* (2020) 45 Cal.App.5th 481, 498.)  Thus, "[t]he appellate court does not take judicial notice of matters not considered by the trial court, absent exceptional circumstances." (*Ibid.*)  Sandra does not identify any exceptional circumstances that warrant a departure from the general rule here.  Accordingly, we deny her request for judicial notice of "the existence and content" of the unlawful detainer action.

---

[6] Sandra also attaches to her request documents she identifies as "Trial Court demonstrating of bodily injury [*sic*] caused by Respondent to Appealant [*sic*], with witness, police report and photograph not taken into consideration"; and "Respondent violating court rules and decorum, mocking the judicial system."  Sandra does not request judicial notice of these additional documents.

**B.    Sandra Does Not Show the Trial Court Applied the Wrong Legal Standard**

Sandra argues the trial court "applied the wrong legal standard" in ruling on Nicholas's request for a DVRO.  (Boldface & underscoring omitted.)  She contends, "A restraining order cannot issue unless the court finds past acts of 'abuse' " as that term is defined in section 6203.  According to Sandra, although section 6203 contains an "exhaustive" list of the conduct that satisfies the definition of abuse, the trial court made an oral remark demonstrating it applied a "catch-all provision" that does not appear in the statute.  (See Applicable Law & Standards of Review, part A, *ante* [discussing § 6203's definition of abuse].)  Specifically, Sandra asserts the trial court stated, " 'I find there is domestic violence *and/or restrainable conduct*.' "  (Italics added.)

Sandra provides no record citation showing that the trial court made such a statement.  That failure is fatal to her claim of error.  (See *Alki Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574, 590, fn. 8 ["[C]ourts will decline to consider any factual assertion unsupported by record citation at the point where it is asserted."].)

In fact, page 92 of the reporter's transcript reveals that the trial court found Sandra "disturb[ed Nicholas's] peace" by entering his "private room" because Sandra was "unwelcome." " '[D]isturbing the peace of the other party' " falls within section 6203's definition of " 'abuse[.]' "  (See *Parris J.*, *supra*, 96 Cal.App.5th at pp. 115–116.)  In sum, we reject Sandra's claim the trial court did not apply the proper legal standard in determining whether to issue the DVRO protecting Nicholas.

12

## C. Sandra Fails To Establish the DVRO Protecting Nicholas Is Not Supported by Substantial Evidence

Sandra raises several challenges to the evidentiary sufficiency of the DVRO protecting Nicholas. Sandra contends (1) her "one act of asking a mediator to offer [Nicholas] cash for keys . . . . is hardly . . . 'domestic violence' "; (2) Nicholas's claim that "he felt insulted" when Sandra asked him if he was gay does not constitute abuse, and Nicholas "fabricated [his claims that Sandra used] other more offensive language such as 'fag, faggot, and homo' "; and (3) Nicholas was "the aggressor and . . . Sandra was the victim in this case" because she "presented evidence [that she] . . . had blood on her finger from [Nicholas] striking her with a steel rod . . . ." Sandra further argues, "Even if everything in [Nicholas's] declaration were true," Nicholas failed to discharge his burden of proof because the "declaration nowhere shows that [Sandra] intentionally or recklessly attempted to cause [Nicholas] bodily injury" or "placed him in reasonable apprehension of serious bodily injury . . . ."

In asserting she merely asked a "mediator/property manager to enter into a settlement negotiation for exchanging cash for [keys]," Sandra ignores the deferential standard governing our review of the trial court's ruling. As discussed in our Applicable Law and Standards of Review, part B, *ante*, we must "view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor." (See *Schmidt, supra*, 44 Cal.App.5th at p. 582.)

Nicholas attested in his declaration that on April 16, 2024, the door to his room "open[ed] really fast"; Sandra and a man "maybe 4 times [Nicholas's] size" "rushed into [his] room"; Sandra

13

looked at Nicholas and "yell[ed], '[T]here he is!' "; the man "step[ped] up really close to [Nicholas] in a menacing and threatening ma[nner][ ] with a hostile looking face"; and "[t]he man . . . sa[id] in a loud and hostile manner, '[Y]ou need to leave!' " Viewing this testimony in the light most favorable to Nicholas, we conclude it constitutes substantial evidence that Sandra had instructed a physically imposing man to intimidate Nicholas in the hopes of forcing him to move out of the residence.

Next, by arguing that Nicholas falsely claimed Sandra called him a " 'fag, faggot, and homo' " and that she offered evidence showing Nicholas cut her finger with a steel rod, Sandra asks us to disregard evidence from Nicholas's declaration that supports the DVRO and, instead, credit evidence favorable to her argument that Nicholas "was the aggressor and . . . [Sandra] was the victim in this case." Yet, we may "reject . . . the statements of a witness who has been believed by the trier of fact[ only if] it [is] . . . physically impossible for the statements to be true, or their falsity [is] apparent without resorting to inferences or deductions." (See *In re Jordan R.* (2012) 205 Cal.App.4th 111, 136.) Because Sandra makes no attempt to satisfy this standard, we may not disregard Nicholas's testimony that she called him these homophobic slurs. Furthermore, we are required to "draw all reasonable inferences [from the evidence] to affirm the trial court" (see *Schmidt, supra*, 44 Cal.App.5th at p. 581) and "resolv[e] every conflict in favor of the judgment" (*Parris J.*, *supra*, 96 Cal.App.5th at p. 116). Sandra does not direct us to evidence in the record supporting her claim that Nicholas cut her finger, let alone make any showing the only reasonable inference from that evidence is that Nicholas was the aggressor and Sandra was the victim. We thus decline to address these

14

evidentiary challenges further.  (See *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 (*Cahill*) [" 'We are not bound to develop appellants' arguments for them.  [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived.' "].)

Lastly, notwithstanding Sandra's argument to the contrary, the DVPA's definition of abuse includes not only " 'intentionally or recklessly caus[ing] or attempt[ing] to cause bodily injury" " and " 'plac[ing] a person in reasonable apprehension of imminent serious bodily injury[,]' " but also, " 'disturbing the peace of the other party[.]'  [Citation.]"  (See *Parris J.*, *supra*, 96 Cal.App.5th at pp. 115–116, quoting § 6203, subd. (a) & § 6320, subd. (a).) Disturbing someone's peace "refers to conduct that . . . destroys the mental or emotional calm of the other party."  (See § 6320, subd. (c).)

Nicholas attested that a large man intimidated Nicholas at Sandra's behest, Sandra frequently berated him with discriminatory language, and Sandra repeatedly broke into his bedroom and opened his mail and e-mails.  (See Factual & Procedural Background, *ante*.)  Absent from Sandra's briefing is any argument this declaration testimony does not constitute substantial evidence that she disturbed Nicholas's peace.  Sandra thus fails to show the trial court erred in finding "there is abuse with respect to [Sandra] against [Nicholas]" warranting issuance of the DVRO.  (See *Needelman v. DeWolf Realty Co., Inc.* (2015) 239 Cal.App.4th 750, 762 ["It is not this court's role to construct arguments that would undermine the lower court's judgment and defeat the presumption of correctness."].)

For these reasons, we conclude Sandra has not rebutted the presumption that substantial evidence supports the DVRO.

15

## D. We Reject Sandra's Argument That the Trial Court Excluded Her From the Residence

Section 6340, subdivision (a)(1) provides in pertinent part: "The court may issue any of the orders described in Article 1 (commencing with Section 6320) after notice and a hearing. When determining whether to make any orders under this subdivision, the court shall consider whether failure to make any of these orders may jeopardize the safety of the petitioner . . . ." (§ 6340, subd. (a)(1).) As relevant here, subdivision (c) provides: "The court may issue an order described in Section 6321 excluding a person from a dwelling if the court finds that physical or emotional harm would otherwise result to the other party . . . ." (*Id.*, subd. (c).)

In turn, section 6321, subdivision (a) authorizes a court to issue "an ex parte order excluding a party from the family dwelling, the dwelling of the other party, [or] the common dwelling of both parties . . . for the period of time and on the conditions the court determines, regardless of which party holds legal or equitable title or is the lessee of the dwelling." (See § 6321, subd. (a).) "The court may issue an order under subdivision (a) [of section 6321] only on a showing of all of the following:  [¶]  (1) Facts sufficient for the court to ascertain that the party who will stay in the dwelling has a right under color of law to possession of the premises.  [¶]  (2) That the party to be excluded has assaulted or threatens to assault the other party . . . .  [¶]  (3) That physical or emotional harm would otherwise result to the other party . . . ." (See *id.*, subd. (b).)

Sandra argues the trial court erroneously issued a "kick-out" or "residence-exclusion order" by "forc[ing Sandra] to leave her own home that she is still paying for with her minor

16

children . . . ." Although the basis for Sandra's assertion the trial court excluded her from the residence is not altogether clear, Sandra intimates in her briefing that because the court permitted Nicholas to remain in the house, "[Sandra] has had to vacate her home for her safety and that of her children, ages 5 and 6." According to Sandra, the court's supposed "dwelling exclusion order" contravenes sections 6321 and 6340 because "there was absolutely no evidence of assaultive behavior toward or injury to [Nicholas]," and "no evidence was presented regarding physical or emotional harm that would support the residence-exclusion order after hearing."

The record belies Sandra's claim that the trial court excluded her from the residence. Although Nicholas sought an order requiring Sandra to move out of the home, the trial court denied that request. The trial court indicated at the June 7, 2024 hearing it had elected not to "grant[ ] move-out orders" because the court did not "have any evidence that the . . . house belongs to" Nicholas.

To the extent Sandra's argument is that the DVRO has the effect of excluding her from the residence, Sandra offers no legal analysis or authority to support the proposition that a restrained party may be deemed "exclud[ed] from a dwelling" for the purposes of sections 6321 and 6340 if that party voluntarily leaves the residence purportedly to seek refuge from the protected party after the trial court expressly refused to issue an exclusion order in favor of the protected party.[7] Additionally,

---

[7] (See § 6340, subd. (c); see also § 6321, subd. (a) [employing substantially similar language to describe the orders governed by that provision, that is, an "order excluding a party

17

Sandra does not argue cogently that the DVRO provision ordering her to stay at least 10 feet away from Nicholas "[w]hen at home" or in "the curtilage" thereof constitutes an order subject to the requirements of sections 6321 or 6340. We thus reject Sandra's argument that the trial court violated those provisions.[8] (See *Cahill, supra*, 194 Cal.App.4th at p. 956.)

Insofar as Sandra believes the provision barring her from being within 10 feet of Nicholas while in the home or its curtilage is impracticable, the record does not indicate that this provision prevents Sandra from using common areas without violating the

---

from the family dwelling[ or] . . . the common dwelling of both parties"].)

[8] We observe that whether section 6321, subdivision (b)'s requirements for an ex parte residence-exclusion order apply to an order issued pursuant to section 6340 after notice and a hearing appears to be an open question. (Compare *Nicole G. v. Braithwaite* (2020) 49 Cal.App.5th 990, 992–993, 999–1001 [affirming a residence-exclusion order issued after a trial because the elements of § 6321, subds. (b)(1), (b)(2), & (b)(3) were satisfied], with Hogoboom & King, Cal. Prac. Guide: Family Law (The Rutter Group 2025) ¶¶ 5:73–5:76, ¶ 5:78 ["A lesser showing is required to support a § 6321(a) dwelling exclusion order *after notice and hearing* [than must be established to obtain an ex parte residence-exclusion order]: The court need simply find 'physical or emotional harm' *would otherwise result* to the applicant [as set forth in § 6340, subd. (c)]. I.e., it need not necessarily be shown that the cause of the 'physical or emotional harm' was an assault or threatened assault [as provided in § 6321, subd. (b)(2)]."].) Because Sandra has not shown the trial court excluded her from the residence for the purposes of either section 6321 or section 6340, we need not decide whether section 6321, subdivision (b)'s requirements apply to an exclusion order issued after notice and a hearing.

DVRO (e.g., the precise dimensions of the residence), and, because we are reviewing the evidence presented to the trial court prior to the issuance of the DVRO, our record necessarily does not include evidence concerning whether Nicholas is engaging in behavior just to cause her to violate the 10-feet restriction. In the event the 10-feet restriction proves impractical, Sandra may seek relief from the trial court. DVROs are " 'subject to termination or modification by further order of the court,' either upon stipulation or after a noticed hearing [citations]; and, such a termination or modification is proper 'upon a showing that there has been a material change in the facts upon which the injunction . . . was granted . . . or that the ends of justice would be served by the modification or dissolution of the injunction . . .' [citations]." (*Salmon v. Salmon* (2022) 85 Cal.App.5th 1047, 1052, 1057–1058.)

## E. Sandra's Remaining Arguments From Her Opening Briefs Fail

In our Discussion, parts B–D, *ante*, we addressed contentions Sandra asserts in the argument section of her opening briefs for the instant appeals. In other parts of Sandra's opening briefs, Sandra raises several additional complaints, none of which is supported by legal analysis or citation to authority and some of which allegedly occurred only after the June 7, 2024 hearing. Illustrative are: "[Nicholas] has had a long standing history of drug abuse since he was expelled from high school"; Nicholas "has taken [Sandra's] USPS mail"; the trial court should not have credited Diane's (Nicholas's other aunt's) testimony "suggest[ing]" that Nicholas "was 'very calm['] in nature" because this witness had previously forged a grant deed; and, "[a]fter the DVRO was issued [against] . . . [Sandra], she was able to obtain

19

many videos where [Nicholas] was the aggressor and was chasing and stalking [Sandra] inside and outside of the home, disturbing the peace by blasting music full blast, and yelling and screaming each night when she would come home from work."

We decline to address these claims of error because Sandra failed to raise them properly. (See *Browne v. County of Tehama* (2013) 213 Cal.App.4th 704, 725–726 [holding that appellants forfeited a contention by failing to "present [it] in the argument section of" their briefing]; *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 162 [holding that an appellant forfeits a claim of error if the party does not " 'supply the reviewing court with some cogent argument supported by legal analysis and citation to the record' "].)

## F.    We Reject the Arguments Sandra Raises In Her Reply

In the reply brief Sandra filed in her appeal from the denial of her request for a DVRO, Sandra levels several arguments that we address below.

First, Sandra cites page 81 of the reporter's transcript for the June 7, 2024 hearing to substantiate her contention that because Diane "admi[tted] under oath that she forged her mother's signature on a notarized grant deed—a criminal act," the trial court erred in "treat[ing Diane] as a credible witness." That excerpt from the reporter's transcript, however, shows only that Diane testified she signed a document "[w]ith [her] mother's permission." The document itself is not in the record before us. This argument thus fails for lack of evidentiary support.

Second, Sandra seems to argue that after the June 7, 2024 hearing, she unsuccessfully requested temporary restraining orders against Nicholas and his sister, and "submitt[ed] 13 videos

20

from June to August 2024 documenting harassment, stalking, and physical altercations . . . ." These videos are not in the appellate record. Even if this footage were before us, however, we could not consider it. (See *In re Marriage of Brewster & Clevenger*, *supra*, 45 Cal.App.5th at p. 498 [holding that an appellate court generally does not consider matters that were not before the trial court at the time it rendered the decision being appealed].)

Lastly, Sandra raises new arguments in her reply that she omitted from her opening brief. Specifically, Sandra argues for the first time that (1) Nicholas admitted at the June 7, 2024 hearing that "he threw metal cans at [Sandra's] vehicle" and (2) Diane's "credibility is further undermined by her implausible claim that she was 'shocked' . . . to discover [Nicholas's] drug use, despite well-documented evidence—including school records of his expulsion, text messages sent directly to her referencing cocaine use, and [Nicholas's] own admissions of addiction to opiates and cocaine, all of which were submitted at trial." By withholding these arguments from her opening brief, Sandra forfeited them. (See *Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 482, 518 [concluding that an appellant "forfeited [a] point" "[b]y not raising [it] in [the] opening brief"].)

## DISPOSITION

We deny Sandra V.'s request for judicial notice that she filed in case No. B339669.  We affirm the trial court's June 7, 2024 order denying Sandra V.'s request for a domestic violence restraining order against Nicholas A. in case No. B339669.  We also affirm the domestic violence restraining order issued on June 7, 2024 against Sandra V. in case No. B339596.  The parties are to bear their own costs on appeal.
NOT TO BE PUBLISHED.


                                                            BENDIX, J.


We concur:



ROTHSCHILD, P. J.



M. KIM, J.